**TIMBERLAND PAVING &
CONSTRUCTION CO.**

v.

**The UNITED STATES**

and

**The American Insurance Co.,
Third Party.**

No. 123–81C.

United States Claims Court.

Aug. 20, 1985.

J. William Bennett, Portland, Or., attorney of record for plaintiff.

Stephen R. Bergenholtz, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

Charles C. Flower, Yakima, Wash., attorney of record for third party.

## OPINION

WOOD, Judge:

In this action, before the court for decision following trial on the merits, plaintiff, a Washington State corporation whose 1978 road construction contract with defendant was purportedly terminated for default April 23, 1980, sues to recover damages for an alleged breach of that contract, plus certain sums said to have been improperly withheld from plaintiff by defendant.

Defendant not only denies any liability to plaintiff but, by way of counterclaim, seeks to recover from plaintiff (in defendant's words) both "damages for the lost benefit of its price bargain" and "contract liquidated damages" (or, as an alternative to the latter, "administrative costs incurred as a result of plaintiff's breach.")

With its answer and counterclaim, defendant filed a motion for notice to American Insurance Co. (American), plaintiff's performance bond surety on the contract in suit. Defendant's motion reflected that, as surety on plaintiff's performance bond,

American might "ultimately be held liable if the United States is successful on its counterclaim herein." The motion was allowed in due course. American subsequently filed a response to defendant's counterclaim, and has fully participated throughout pretrial and trial of this case.

For the reasons, and under the facts and circumstances, set forth hereinafter, the court concludes that the purported termination of plaintiff's contract for default was invalid and of no legal force and effect, and that it is accordingly entitled to recover, but that, under the terms of the contract, the amount due plaintiff is to be determined, at least in the first instance, administratively. Accordingly, and pursuant to the provisions of 28 U.S.C. § 1491(a)(2) (1982), this case is hereby remanded to the Commissioner of Indian Affairs with instructions to proceed promptly to determine the amount due plaintiff "as if the notice of termination [for default] had been issued * * * " to plaintiff pursuant to the contract "clause providing for termination for convenience of the Government * * *."

Pursuant to RUSCC 60.1(a)(2), proceedings in this court are hereby stayed for a period not to exceed six months from the date of the filing of this opinion. The attorney of record for plaintiff shall report to the court the status of the matter on remand in conformity with the requirements of RUSCC 60.1(a)(5).

## I

On September 29, 1978, defendant, acting through the Portland (Oregon) Area Office, Bureau of Indian Affairs (BIA), Department of the Interior,[1] awarded to plaintiff Contract No. POOC14205709 (hereinafter "the contract") to perform work on a project ("Project No. YIR 140(4),") described as "Emulsified Asphalt Concrete Pavement, Grade and Drain on 9.195 miles of Signal Peak Road" on the Yakima Indian Reservation, Yakima County, Washington, at a firm fixed price of $1,282,842.[2] Work was to be completed within 220 calendar days after receipt of notice to proceed. The contract contained Standard Form 23–A (Rev. 4–75), "General Provisions (Construction Contract)," which included standard Changes, Differing Site Conditions, Termination for Default, and Disputes Clauses. American furnished payment and performance bonds for plaintiff in connection with the contract.

On April 23, 1979, plaintiff received instructions to proceed with the contract work.[3] The contracting officer then advised plaintiff that 170 days remained for contract performance. Plaintiff (through a subcontractor employed to clear, pioneer, drill and blast a rock bluff area between Station 296 and Station 323) began work at the project site on April 23, 1979.

By early June, 1979, subcontractor coordination difficulties had arisen. Moreover, plaintiff took the position that there was a serious safety problem in the rock bluff area, and asked that defendant inspect the work site and advise plaintiff how it could safely proceed with the contract work in that area. Defendant was of the view that no real safety problem existed, and that plaintiff should proceed to construct the rock cut as designed.

Work in the rock bluff area came to a halt about the middle of June, 1979, and neither plaintiff nor any of its subcontractors performed any work on the unclassified excavation work item in the contract during July and August 1979. Although plaintiff (through a new subcontractor)

---

1. The contract was executed for defendant by Gene R. Powers as contracting officer. At that time, Mr. Powers was the Portland Area Property and Supply Officer.

2. The 9-mile section of Signal Peak Road, the main road on the Yakima Indian Reservation, was (and is) located in the Cascade Mountains, at elevations ranging from 2400 to 4000 feet.

3. Notice to proceed had originally been issued in October 1978. Plaintiff entered into several subcontracts covering contract work in November 1978, but performed no work at the job site between October and early December 1978, when defendant suspended contract work for the winter.

subsequently did perform some work on the unclassified excavation item, progress on this work was slow. By October 13, 1979, four days after the time then allowed for completion of work under the contract had expired, plaintiff had completed approximately 27 percent of the work on Project No. YIR 140(4).

In the interim, during the period July 23 to August 1, 1979, and again from September 9 to 19, 1979, defendant had performed road maintenance in the project area, the asserted cost of which (some $5,295) was withheld from progress payments due plaintiff. Moreover, in mid-October 1979, the contracting officer advised plaintiff that liquidated damages would be assessed against plaintiff commencing October 10, 1979, and such damages were in fact assessed and also withheld from progress payments due plaintiff.[4]

Between June and November 1979, considerable discussion about, and some investigation into, the matter of safely performing work in the rock bluff area had taken place, and on November 21, 1979, a meeting, at which plaintiff proposed a design change in the project, was held. BIA then agreed that it would consider the proposed change. As will be seen, the proposal remained under consideration by the BIA for some three months thereafter, but was ultimately rejected.

On November 23, 1979, two days after the meeting described in the proceding paragraph, Mr. Powers, as contracting officer, suspended work on the project due to unfavorable weather as of the close of business that day. He then advised plaintiff that it had exceeded total contract time by 45 days. On November 27, 1979, Mr. Powers directed to plaintiff a notice to show cause why the contract should not be terminated for default. Plaintiff respond-

ed to that notice December 12, 1979, asserting (in broad terms) that any action to terminate the contract for default at that time would be inappropriate.

By letter, dated December 13, 1979, to Mr. Powers, as contracting officer, plaintiff transmitted two claims. The first was for contract payments allegedly improperly withheld in consequence of government performance of road maintenance for which, according to the BIA, plaintiff was responsible. The second was for contract payments withheld in consequence of an allegedly "improper and erroneous assessment of liquidated damages." In conjunction with the latter claim, plaintiff specifically asserted that it was entitled to a considerable extension of contract time, and that, in substance, it was not then in default. With respect to both claims, plaintiff gave notice that "the contractor elects to have your determination * * * made under the Contract Disputes Act of 1978 * *."

In or prior to mid-January, 1980, Mr. Powers, to that point the BIA Area Property and Supply Officer in Portland, was transferred to Washington, D.C.,[5] where he worked for a time as Special Assistant to the BIA Commissioner.[6] His departure from the Portland Office occurred before any decision upon the claims described in the preceding paragraph.

In 1979 and 1980, it was the policy of the Department of the Interior, and the BIA, to delegate and redelegate procurement authority to contracting officer positions, rather than to individuals. 41 CFR §§ 14–1.402, 14–1.404–2 (1980); 41 CFR § 14H–1.451 (1980). Mr. Powers' position in the Portland Area Office was one of two in that office "designated as a Contracting Officer position" by the BIA. 41 CFR

---

**4.** The contract specified a liquidated damages rate of $475 per day for "each calendar day of delay beyond the time for completion stated in the contract, or any extension thereof that may be granted pursuant to the terms of the con-

tract, until the work is determined * * * to be substantially complete."

**5.** Mr. Powers left Portland "around about the first week or so of January 1980."

**6.** Mr. Powers then became Assistant Area Di-

§ 14H–1.451–2 (1980).[7] Any designation of a contracting officer, whether by delegation of authority to an individual or to a contracting officer position, "shall remain effective until the contracting officer is reassigned, his employment is terminated, or his designation is revoked," but "No revocation [of a designation as contracting officer] shall operate retroactively." 41 CFR § 1.1–404–3 (1980); *see also* 41 CFR §§ 14–1.402(b), 14–1.404 (1980).

By letter, dated February 25, 1980, signed by "M.L. Carter, Contracting Officer", plaintiff was informed that BIA had "determined that the Contractor's proposed design change [submitted to BIA at the November 21, 1979, meeting] is not economically feasible." Mrs. Carter was a Supervisory Contract Specialist in the Portland Area Office, and, as noted above, her position was specifically designated by the BIA as a contracting officer position.[8]

During the period between February 25, 1980, and April 23, 1980, some consideration was given to plaintiff's pending claims under the contract, and to the question whether to terminate the contract under its "Termination for Default—Damages for Delay—Time Extensions Clause." On April 21, 1980, the BIA Assistant Area Director for Administration in Portland requested the assistance of the Commissioner of Indian Affairs in Washington, D.C. in designating Mr. Powers, the former contracting officer, contracting officer for plaintiff's contract.[9]

Prior to any designation of Mr. Powers to act as contracting officer on plaintiff's contract,[10] a "Notice of Contracting Offi-

cer's Final Decision," and a "Notice of Termination for Default," both dated April 23, 1980, and both signed by "Gene R. Powers, Contracting Officer," were issued. Both documents reflected Mr. Powers' address as "Bureau of Indian Affairs, * * * Portland, Oregon 97208." Both documents were dated by hand, and it is clear from the record that both were in fact signed on April 23, 1980.

The "Contracting Officer's Final Decision" stated, in part, that plaintiff's December 1979 claims for sums withheld by defendant for road maintenance performed by BIA, and for liquidated damages, had been separately considered and denied. In the process, the conclusion that no extensions of time for contract performance were warranted was explicitly set forth. The "Notice of Termination for Default" referred to a failure to complete the work within the time specified in the contract, and (again) to the conclusion that no extensions of time for contract performance were justified. It is fair to describe the denial of plaintiff's liquidated damages claim, and the decision to terminate for default, as inextricably intertwined.

By telegram, dated April 25, 1980, the Acting Deputy Commissioner, BIA, Washington, D.C., in response to the Portland Area office's April 21, 1980 request, advised the Regional Office as follows:

THIS OFFICE CONCURS WITH THE DESIGNATION OF GENE POWERS AS CONTRACTING OFFICER FOR CONTRACT POOC14205709 AND HAS PREPARED A DELEGATION OF AUTHORITY ACCORDINGLY.

rector for Administration in Alaska.

7. The other position was that of "Supervisory Contract Specialist, * * * Portland Area office."

8. 41 CFR § 14H–1.451–2 (1980). Mr. Powers apparently believed that after he left Portland "the contracting officer's job was vacant." On this record, however, his testimony on that point cannot be accepted. Mrs. Carter unquestionably acted as contracting officer on the contract in suit thereafter. *Cf. Sun Oil Co. v. United States,* 572 F.2d 786, 805, 215 Ct.Cl. 716 (1978) ("* * * there is a presumption that public officials perform their duties in a proper manner.")

9. The position of Special Assistant to the Commissioner was not designated as a contracting officer position in 1980. 41 CFR § 14H–1.451–2 (1980).

10. The statement in the text refers to, and is limited to, the period following Mr. Powers' reassignment from a designated contracting officer's position in Portland to a nondesignated one in Washington, D.C. *See* 41 CFR §§ 1–1.-404–3, 14H–1.451–2 (1980).

By memorandum, dated April 28, 1980, and addressed to Mr. Powers, the Acting Deputy Commissioner stated that

* * * you are hereby delegated Contracting Officer authority insofar as Contract No. POOC14205709 is concerned * * *. This delegation is effective as of April 23, 1980.

Precisely when Mr. Powers received that memorandum is unclear.[11]

This action was commenced March 5, 1981. For present purposes, subsequent factual developments related to the contract in suit may be, and are, pretermitted.

### . II

In the April 23, 1980 "notices" described hereinabove, Mr. Powers, as "contracting officer," purported to act upon and to deny (*inter alia*) plaintiff's claims that it had *not* failed to complete the contract work "within the time specified in this contract," as plaintiff was contractually entitled to have that time extended, and that the assessment of liquidated damages for failure to complete the contract work within such time was erroneous and improper.[12]

Plaintiff's claims had been duly and validly presented to Mr. Powers in December 1979 (with advice that "the contractor elects to have your determination of these claims made under the Contract Disputes Act of 1978 * * * "). At trial, however, the facts presented raised at least serious question whether, at the time he purported to act upon those claims, Mr. Powers was still the contracting officer for plaintiff's contract (or indeed a contracting officer at

all).[13] In view of those facts, the first problem that must be considered is whether this court has any jurisdiction over the case under the Contract Disputes Act.

A contracting officer's decision on a claim, or a failure to issue a decision on the claim, "within the period required * * *" by statute, is a necessary prerequisite to an action under the Contract Disputes Act in this court. 41 U.S.C. § 605(c)(5) (1982); *Paragon Energy Corp. v. United States,* 645 F.2d 966, 970, 227 Ct.Cl. 176 (1981). Under the Act, once a claim has been properly made and validly denied, or is deemed to have been denied, the contractor may bring an action directly on the claim in this court. 41 U.S.C. § 609(a)(1) (1982); *Paragon,* 645 F.2d at 970, 971.

If Mr. Powers were, in fact, authorized to act as contracting officer on plaintiff's contract on April 23, 1980, the court's jurisdiction to entertain this case would not seem to be open to any real question. 41 U.S.C. §§ 605, 609 (1982). Indeed, a lengthy trial, involving a 1900 page record and hundreds of exhibits, has been held in this case with no such question raised.

Perhaps the same result would apply if—as defendant asserts—Mr. Powers' acts were somehow within his "implied authority," or valid because of "ratification, or delegation." If, however, as the court has concluded,[14] Mr. Powers lacked any authority to act as contracting officer on April 23, 1980, and if his purported acts were not validated by subsequent events, what legal consequences flow therefrom?

---

**11.** The record contains no indication of any written revocation or termination of Mrs. Carter's authority to serve as contracting officer on plaintiff's contract. *Cf.* 41 CFR § 1–1.404–3 (1980) ("No revocation [of designation of a contracting officer] shall operate retroactively.")

**12.** Both the purported denial of plaintiff's specific monetary claim to the amounts theretofore assessed and collected as liquidated damages and the purported default termination rest upon the same basic determination: "that no additional extension of contract time is justified" or, as the "Notice of Termination For Default" put

it, that "a time extension is not justified under * * * the Default clause * * *."

**13.** The issue of Mr. Powers' authority to act arose at trial. In the circumstances, defendant was afforded, but did not exercise, the right to file a motion to reopen proof, accompanied by any documentary materials bearing on the issue of Mr. Powers' authority to terminate plaintiff's contract defendant desired the court to consider.

**14.** The reasons for the court's conclusions will appear below. Section III, *infra.*

Defendant vigorously asserts that even if the claims submitted to Mr. Powers in December 1979 were not validly denied by him on April 23, 1980,[15] each of those claims (for road maintenance costs, and for liquidated damages allegedly erroneously and improperly withheld because plaintiff was entitled to an extension of contract time) was, as defendant puts it, "denied by operation of law * * * " for jurisdictional purposes (albeit *when* those claims may be deemed to have been so denied is not stated). *Cf. G & H Machinery Co. v. United States*, 7 Cl.Ct. 199, 202–03 (1985).

■ That assertion is probably a sound one. And, it leads directly to the conclusion that, plaintiff having pursued *its* right to file suit in this court's predecessor within the time permitted by the Contract Disputes Act, 41 U.S.C. § 605 (1982), the court is clearly not without jurisdiction over the complaint herein.[16] But, nothing in fact or law in any way validates *Mr. Powers'* purported denial of the liquidated damages claim, at least, or his consequent termination of plaintiff's contract for default. Those actions were not within his authority, when taken, and are null and void and of no legal effect. *Samuel T. Isaac & Assoc. v. United States*, 5 Cl.Ct. 490, 493 (1984); *see also Chris Berg, Inc., v. United States*, 426 F.2d 314, 192 Ct.Cl. 176 (1970); *Climatic Rainwear Co. v. United States*, 88 F.Supp. 415, 115 Ct.Cl. 520, 558–59, 564–65 (1950).

The termination for default clause of plaintiff's contract provided in effect that plaintiff's right to proceed with the contract work "shall not * * * be terminated" for default where it "was not in default under the provisions of this clause, or [where] the delay was excusable under the provisions of this clause * * *." Moreover, and in the factual context of this case, it required that, on request, and prior to any termination of the contract for default, the *contracting officer* "shall ascertain the facts and the extent of the delay and extend the time for completing the work when, in his judgment, the findings of fact justify such an extension * * *." *See Argonaut Ins. Co. v. United States*, 434 F.2d 1362, 1368, 193 Ct.Cl. 483 (1970); *see also DeVito v. United States*, 413 F.2d 1147, 188 Ct.Cl. 979 (1969); *Climatic Rainwear*, 115 Ct.Cl. at 558–59, *Schlesinger v. United States*, 390 F.2d 702, 709, 182 Ct.Cl. 571 (1968); *Mid-South Contractors, Inc.*, Docket No. VABCA–2023, decided June 21, 1985. While Mr. Powers purported to deny plaintiff's request for a time extension and to comply with the fact finding and other requirements of the Default Clause on April 23, 1980, he was not then the "Contracting Officer." Section III, *infra*. As a result, the duties and obligations made by that clause a prerequisite to a termination for default thereunder simply were not met.

■ The consequence of the foregoing is that plaintiff's claims (or some of them, at least) are validly before the court, and that the record of trial serves as an abundant foundation for the conclusion that the purported April 23, 1980, termination of plaintiff's contract for default was invalid and of no force and effect. Accordingly, and under the literal terms of plaintiff's contract, "the rights and obligations of the parties [are] the same as if the notice of termination [for default] had been issued pursuant to the [contract clause providing for termination for convenience of the Government]." *See Kisco Co. v. United States*, 610 F.2d 742, 753–55, 221 Ct.Cl. 806 (1979); *see also Torncello v. United States*, 681 F.2d 756, 231 Ct.Cl. 20 (1982); *International Telephone & Telegraph Co.*

---

**15.** Defendant vigorously asserts that Mr. Powers' acts *were* valid.

**16.** Because the denial of a claim of right to an extension of contract performance time underlay both denial of its valid money claim *and* the default termination, examination of the propriety of *both* actions is, in the strange and narrow facts and circumstances of this case, justified. *Cf. Berna Gunn-Williams v. United States*, 6 Cl.Ct. 820 (1984); *Berna Gunn-Williams v. United States*, 8 Cl.Ct. 531 (order July 17, 1985) (Yock, J.)

*v. United States,* 509 F.2d 541, 206 Ct.Cl. 37 (1975).[17]

### III

■ When Mr. Powers was transferred from Portland to Washington, D.C., he ceased to serve as contracting officer on plaintiff's contract. The applicable procurement regulations, the subsequent action of Mrs. Carter as contracting officer on that contract, the Portland Area Office's April 21, 1980 request that Mr. Powers be designated contracting officer, the Acting Deputy Commissioner's April 25, 1980, response to that request, and the Acting Deputy Commissioner's Memorandum of April 28, 1980, to Mr. Powers, make that abundantly clear. On April 23, 1980, Mr. Powers had no authority to serve as contracting officer on plaintiff's contract.[18] See *Schoenbrod v. United States,* 410 F.2d 400, 404, 187 Ct.Cl. 627 (1969).

Indeed, defendant seems tacitly to concede that Mr. Powers lacked actual authority, on April 23, 1980, to act as contracting officer on plaintiff's contract. It urges, rather, that "a retroactive delegation of authority," or a "ratification" of Mr. Powers' "assertion of authority," occurred, and that the termination for default should accordingly be upheld on one of these grounds. The notion is unsound.

■ Contracting officers are authorized to act within the limits of the authority delegated to them, and are to be selected and designated as contracting officers before becoming eligible to act as such. 41

CFR §§ 1–1.402, 1–1.404 (1980). They are not to be designated retroactively, and after the fact. This is apparent from a fair reading of the applicable statute and procurement regulations pertaining to contracting officers, and it represents a fair and logical interpretation of the definition of "Contracting Officer" in plaintiff's contract.[19] The court cannot accept the government's retroactive delegation (or designation) argument.

■ Nor is defendant's ratification theory any more valid.

In the first place, the Federal Procurement Regulations (which do expressly provide, in certain limited circumstances, for ratification of unauthorized contract awards, 41 CFR § 1–1.405 (1980)) do not sanction ratification of any other kinds of unauthorized actions by a contracting officer. *Cf. Consortium Venture Corp. v. United States,* 5 Cl.Ct. 47, 51 (1984). Too, the requirement that designated BIA contracting officers "must exercise their duties and responsibilities in respect thereto in conformity with the authority given," 41 CFR § 14–1.404–2 (1980), militates strongly against the concept of ratification of an unauthorized "contracting officer's" decision in any other area.

There is, moreover, grave doubt that even one to whom authority to designate contracting officers had been duly delegated could lawfully act after the fact, either retroactively or by ratification, so as to render valid what occurred in this case. *See* 41 CFR § 1–1.404 (1980);[20] *cf.* 41 CFR

17. Defendant's suggestion that the purported termination should not be invalidated by "purely 'technical defects'" (citing *Morrison Assurance Co. v. United States,* 3 Cl.Ct. 626, 636–37 (1983)) has no merit. The absence of authority to act as contracting officer is scarcely a "technical" defect. See *Bailey Specialized Bldgs. v. United States,* 404 F.2d 355, 186 Ct.Cl. 71 (1968). See also *Kisco,* 610 F.2d at 750–51.

18. The purported retroactivity of the April 28, 1980, "delegation" will be discussed hereinafter. Defendant's allusion to Mr. Powers' "implied authority" to serve as contracting officer is

sheer sophistry. 41 U.S.C. § 601(3) (1982), ("contracting officer" means one who "by appointment in accordance with applicable regulations has the authority to enter into and administer contracts and to make determinations and findings with respect thereto.") See also 41 CFR § 14–1.404 (1980).

19. Defendant's assertion that it knows nothing that "would prohibit a retroactive delegation of authority" turns the question on its head.

20. Nothing in the record discloses an "agency procedure" providing for either course.

§ 1–1.404–3 (1980), prohibiting retroactive revocation of a designation as contracting officer. Defendant cites no apposite authority for the proposition that ratification would be permissible here, nor has the court discovered any.[21]

 Finally, the question whether or not one who has performed a particular act intended thereby to ratify a previously unauthorized act is, as 41 CFR § 1–1.405 (1980) suggests, a factual one. *See United States v. Beebe,* 180 U.S. 343, 354, 21 S.Ct. 371, 375, 45 L.Ed. 563 (1901).[22] The Acting Deputy Commissioner did not testify, nor (despite an opportunity to do so) did defendant even attempt—the documents referred to hereinabove aside—to establish either his knowledge of the facts of the situation, or his actual intent in signing them. On this record, and all else aside, ratification has not been proven.

## IV

In the trial and briefing of this case, a number of other claims have been advanced by plaintiff, defendant, and American. Acceptance of plaintiff's basic position respecting the purported termination of plaintiff's contract for default obviates any need for detailed consideration of other contentions of the parties at this point.

In broad terms, plaintiff has contended, alternatively, that defendant breached the contract by its failure "to act in good faith in the administration of the contract"; that by its actions defendant waived any right it might have had to terminate the contract for default; that, in any event, defendant is not entitled to recover damages herein; and that plaintiff is entitled to recover on its December 1979 claims with respect to road maintenance costs and liquidated damages.[23]

Defendant would have the court uphold the validity of the default termination and also enter judgment in its favor not only for "damages for the lost benefit of its price bargain" in consequence of plaintiff's default, said to aggregate $411,000, but also for liquidated damages, for the period 1979 to 1982, of some $154,000 (or, alternatively, for administrative costs of some $20,000), or a total of $565,000.[24]

As plaintiff accurately suggests, the conclusion that plaintiff is entitled to have its rights and obligations under the contract determined as if the notice of termination had been issued pursuant to the termination for convenience clause moots plaintiff's (and American's) claims and contentions herein, with two possible (and minor) exceptions.

 As to the first of those exceptions, the record establishes that plaintiff's claim for costs of road maintenance withheld ($5,295), while properly before the court, lacks merit. As noted above, however, Mr. Powers' April 23, 1980, denial of plaintiff's claim to the amounts withheld for liquidated damages due to "delay" ($10,450), was invalid and of no force and effect when rendered. And, in the court's judgment, that invalidity cannot properly be deemed to have been cured by any subsequent "operation of law" denial of that claim. Accordingly, the government's

---

**21.** Defendant's reliance on *Centre Mfg. Co. v. United States,* 392 F.2d 229, 183 Ct.Cl. 115 (1968) and *Williams v. United States,* 127 F.Supp. 617, 130 Ct.Cl. 435, *cert. denied,* 349 U.S. 938, 75 S.Ct. 783, 99 L.Ed. 1266 (1955) is misplaced. Those cases are so sharply distinguishable as to be of no comfort to it here.

**22.** "Where an agent has acted without authority and it is claimed that the principal has thereafter ratified his act, such ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken.

This is as true in the case of the Government as in that of an individual * * *. Knowledge of the facts is the essential element of ratification, and must be shown or such facts proved that its existence is a necessary inference from them."

**23.** In arguing that it has been discharged from any liability on plaintiff's performance bond, American in essence urges some of those same contentions, as well as others.

**24.** All of the dollar amounts stated have been rounded off to the closest thousand.

withholding, from moneys otherwise due plaintiff, of sums representing liquidated damages for "delay" was improper, and plaintiff is entitled to recover the amounts so withheld.[25] *Cf.* RUSCC 54(b).

■ Defendant's claims and contentions in support of its right to affirmative monetary relief on its counterclaim depend on the validity of the April 23, 1980, default termination. Where a termination for default is, as here, in the contemplation of the law one for the convenience of the government, neither liquidated damages for any period following the termination [26] nor common law damages for a breach may properly be assessed against a government contractor. *John A. Johnson Contracting Corp. v. United States,* 132 Ct.Cl. 645, 655, 661 (1955). Accordingly, defendant's counterclaim must be and is denied.

## V

By way of summary, this case is hereby remanded to the Commissioner of Indian Affairs, pursuant to 28 U.S.C. § 1491(a)(2), with instructions to proceed promptly to determine the amount due plaintiff as if the April 23, 1980, notice of termination for default issued to it had been issued pursuant to the contract clause providing for termination of the contract for convenience of the government.[27]

Pursuant to RUSCC 60.1(a)(2), proceedings in this court are hereby suspended for a period not to exceed six months from the date of the filing of this opinion. Pursuant to (and in conformity with the requirements of) RUSCC 60.1(a)(5), the attorney of record for plaintiff shall periodically report to the court the status of the matter on remand.

**25.** This case is being remanded for an administrative determination of the amount due plaintiff under the contract's termination for convenience clause. In the process, defendant may and should recognize and implement this holding. See RUSCC 60.1(a); *cf.* RUSCC 60.1(b)(2), (4).

**26.** Contract work had been shut down in November 1979. No notice to proceed with the work was ever issued thereafter.

**27.** In the process, further administrative consideration is to be given to plaintiff's claim on December 13, 1979, purportedly denied by Mr. Powers on April 23, 1980, with respect to liquidated damages withheld. See note 25, *supra.*