# United States Tax Court

T.C. Memo. 2022-2

LONG BRANCH LAND, LLC, BIG ESCAMBIA VENTURES, LLC,
TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———

Docket No. 7288-19.                    Filed January 13, 2022.

———

*Michael Todd Welty*, *Lyle B. Press*, *Andrew W. Steigleder*, and *Kevin M. Johnson*, for petitioner.

*Edward A. Waters*, *Stephen A. Haller*, *Christopher A. Pavilonis*, and *Thomas F. Harriman*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a charitable contribution deduction claimed by Long Branch Land, LLC (Long Branch), for a conservation easement. The Internal Revenue Service (IRS or respondent) disallowed the deduction and determined penalties. Currently before the Court is respondent's motion for partial summary judgment addressing the question whether the IRS complied with section 6751(b)(1) with respect to these penalties.[1]

Section 6751(b)(1) requires that the "initial determination" of a penalty assessment be personally approved (in writing) by the imme-

———

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26, U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] diate supervisor of the person making that determination. The "initial determination" of the penalties was communicated to Long Branch on February 6, 2019. Because the examining agent secured his immediate supervisor's approval before that date, respondent urges that approval was timely. Conceding that the supervisor timely approved the penalties, petitioner asserts that the supervisor lacked authority to supply approval. Finding no merit in this argument, we will grant respondent's motion.

*Background*

The following facts are derived from the pleadings, the parties' motion papers, and the exhibits and declarations attached thereto. Long Branch had its principal place of business in Georgia when the petition was timely filed.

Long Branch was formed as a Georgia limited liability company in June 2014. For its short tax year beginning November 19 and ending December 31, 2014, it was treated as a partnership for Federal income tax purposes. Long Branch is subject to the TEFRA unified audit and litigation procedures,[2] and petitioner Big Escambia Ventures, LLC, is its tax matters partner (TMP). The TMP has filed petitions in 11 other cases involving conservation easements.

In October 2014 Long Branch acquired roughly 260 acres of land in Escambia County, Alabama. On December 4, 2014, Long Branch granted to the National Wild Turkey Federation Research Foundation (NWT) a conservation easement over the land. Three weeks later, Long Branch donated a fee simple interest in the land to a passthrough entity wholly owned by NWT.

Long Branch timely filed Form 1065, U.S. Return of Partnership Income, for its short 2014 tax year. On that return it claimed a charitable contribution deduction of $10,425,000 for its donation of the easement. It also claimed a charitable contribution deduction of $3,475,000 for its donation of the fee simple interest.

The IRS selected Long Branch's return for examination and assigned the case to Revenue Agent (RA) Guy Lorient, a member of Team 1711 in the IRS Large Business & International Division. At that time

---

[2] Before its repeal, TEFRA (the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, §§ 401–407, 96 Stat. at 648–71) governed the tax treatment and audit procedures for many partnerships.

[*3] Supervisory Revenue Agent Rachel Moore served as the acting team manager of Team 1711. Mabeline Baldwin, the acting territory manager for the region, had appointed Ms. Moore to that position in March 2018.

Ms. Moore's supervision of Team 1711, as reflected on Form 10247, Internal Revenue Service Designation, was initially set to expire on July 7, 2018. However, on June 22, 2018, Ms. Baldwin informed Team 1711 that Ms. Moore would continue to serve as acting team manager for the remainder of the fiscal year ending September 30, 2018.

Charles Daniel succeeded Ms. Baldwin as acting territory manager on June 25, 2018. He subsequently discovered that Ms. Baldwin had not executed a new Form 11247, so he prepared one on August 7, 2018. The form confirmed that Ms. Moore's appointment had already taken effect and would continue until September 30, 2018.

Under Ms. Moore's ongoing supervision, RA Lorient proceeded to complete the Long Branch examination. In July 2018 he made the decision to assert penalties for gross valuation misstatement under section 6662(h) and (in the alternative) substantial valuation misstatement under section 6662(e). He also decided to assert penalties under section 6662(b)(1) and (2) and section 6662A. His recommendations to this effect were set forth in a Civil Penalty Approval Form, which Ms. Moore signed on July 31, 2018, as the "Acting Team Manager."

RA Lorient concurrently prepared a Supplemental Civil Penalty Approval Form, which states that RA Lorient "made the initial determination to assert . . . penalties." RA Lorient signed that form on July 31, 2018, and Ms. Moore signed it the same day as the "Examiner's Immediate Supervisor." Six months later, on February 6, 2019, the IRS issued a notice of final partnership administrative adjustment (FPAA) disallowing the charitable contribution deduction for the easement, reducing the deduction for the fee simple donation, and determining penalties.

*Discussion*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C.

[*4] 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).  The sole question presented at this juncture is whether the IRS complied with the requirements of section 6751(b)(1).  We find that this question may be adjudicated summarily.

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination."  In a TEFRA case such as this, supervisory approval generally must be obtained before the FPAA is issued to the partnership.  *See Palmolive Bldg. Inv'rs, LLC v. Commissioner*, 152 T.C. 75, 83 (2019).  If supervisory approval was obtained by that date, the partnership must establish that the approval was untimely, i.e., "that there was a formal communication of the penalty before the proffered approval" was secured.  *See Frost v. Commissioner*, 154 T.C. 23, 35 (2020).

Respondent has supplied the penalty approval forms by which RA Lorient recommended assertion of penalties against Long Branch.  RA Lorient's acting team manager, Ms. Moore, signed the forms on July 31, 2018.  The definite decision to assert penalties was communicated to Long Branch more than six months later, in the FPAA dated February 6, 2019.  Respondent thus contends that approval of these penalties was timely secured.  *See ibid.*; *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020).

Petitioner does not allege that the IRS formally communicated to Long Branch, before July 31, 2018, its decision to assert penalties.  But petitioner asserts that Ms. Moore lacked authority to supervise the examination and that her approval of the penalties on that date was meaningless.  That is so, petitioner contends, because Ms. Moore's designation as acting team manager expired on July 7, 2018.

We disagree.  Although Ms. Moore's appointment was initially set to expire on July 7, 2018, the IRS extended her appointment to September 30, 2018.  Ms. Baldwin, the then-acting territory manager, communicated that decision to Team 1711 on June 22, 2018.  Acknowledging Ms. Baldwin's action, petitioner asserts that she "did not have authority to appoint Moore . . . for a period that was to commence after Baldwin's authority to serve as Acting Territory Manager had expired [on June 23, 2018]."  But Ms. Moore's appointment did not "commence" after Ms. Baldwin stepped aside.  Ms. Moore was already serving as acting team

[*5] manager, and her period of service was simply extended to the end of the fiscal year.

There is no evidence to suggest that Ms. Moore lacked supervisory authority on July 31, 2018, when she approved RA Lorient's penalty recommendations. At no point did RA Lorient or any other team member question Ms. Moore's supervisory authority. To the contrary, RA Lorient worked closely with her throughout the examination and, when the examination neared completion, viewed her as the proper person to review his penalty determinations. Ms. Moore agreed with his recommendations and signed two penalty approval forms: one as the "acting team manager" and the other as his "immediate supervisor."

Petitioner relies heavily on the Form 10247 that Mr. Daniel prepared on August 7, 2018, confirming Ms. Moore's appointment through September 30, 2018. Petitioner argues that Mr. Daniel's completion of this form reflects an "effort to cure unauthorized action by Government employees through retroactive delegations of authority."[3] But Mr. Daniel did no such thing. He simply memorialized Ms. Baldwin's June 22 delegation on Form 10247, thereby confirming that Ms. Moore had served, and would continue to serve, as Team 1711's acting manager through September 30, 2018.

The "presumption of regularity" supports the actions of the IRS officers in this case. "The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Pietanza v. Commissioner*, 92 T.C. 729, 739 (1989), *aff'd*, 935 F.2d 1282 (3d Cir. 1991). Indeed, "[i]t is the settled general rule that all necessary prerequisites to the validity of official action are presumed to have been complied with." *Lewis v. United States*, 279 U.S. 63, 73 (1929); *see Mecom v. Commissioner*, 101 T.C. 374, 388 (1993) (holding that IRS officials "are presumed to have properly discharged their official duties"), *aff'd*, 40 F.3d 385 (5th Cir. 1994).

---

[3] Petitioner cites *Timberland Paving & Construction Co. v. United States*, 8 Cl. Ct. 653 (1985), for the proposition that retroactive delegations are unlawful. That case involved a Government contract dispute. The U.S. Claims Court interpreted regulations issued under Title 41 of the U.S. Code and held that "[c]ontracting officers . . . are not to be designated retroactively." *Id.* at 660. Petitioner's reliance on this case is misplaced for several reasons, the most obvious one being that Title 41, which governs public contract law, has no application to tax cases.

**[\*6]**    Petitioner has offered no "clear evidence" to overcome this presumption. Indeed, if Ms. Moore lacked authority to serve as acting team manager, then Team 1711 would have had no manager for at least a month. Congress enacted section 6751(b) "to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle." *Chai v. Commissioner*, 851 F.3d 190, 219 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42. Without Ms. Moore at the helm, all members of Team 1711 (on petitioner's theory) would have been compelled to assert penalties on their own (and violate the statute) or cease work indefinitely (and needlessly prolong the examination). We doubt that Congress wished to create this sort of dilemma. *Cf.* S. Rep. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601 (stating that proper supervision would ensure that IRS agents assert penalties "where appropriate").

In any event, under section 6751(b)(1), RA Lorient was required to secure timely approval of the penalties from his "immediate supervisor." Although the Internal Revenue Code does not define the term, we have held that the immediate supervisor is "the person who supervises the agent's substantive work on an examination." *Sand Inv. Co., LLC v. Commissioner*, 157 T.C. __, __ (slip op. at 11) (Nov. 23, 2021). Petitioner does not dispute that Ms. Moore, who signed the Supplemental Civil Penalty Approval Form as the "examiner's immediate supervisor," in fact oversaw RA Lorient's substantive work during the examination. Thus, even if Ms. Moore somehow lacked authority to serve as RA Lorient's "acting team manager," she properly approved the penalty determinations as his "immediate supervisor."

To reflect the foregoing,

*An order will be issued granting respondent's motion for partial summary judgment.*