CONSORTIUM VENTURE
CORPORATION,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 72–79.

United States Claims Court.

April 6, 1984.

Bernard J. Stuplinski, Cleveland, Ohio, for plaintiff.

Gordon A. Jones, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TIDWELL, Judge.

This is an action to recover sums claimed by plaintiff, Consortium Venture Corporation, under a contract between plaintiff and United States. Defendant has proffered six affirmative defenses to plaintiff's complaint[1] and has entered seven counterclaims against plaintiff.

Defendant has filed a Motion for Partial Summary Judgment which, if granted, would effectively moot all claims before the court except for defendant's third through seventh counterclaims.[2] Defendant's Motion for Partial Summary Judgment addresses defendant's sixth affirma-

tive defense; i.e., that the contract is a nullity because the contracting officer had no authority to execute the contract, and defendant's first counterclaim, which seeks the refund of $71,877, plus interest, erroneously paid to plaintiff.

The court is of the opinion that Defendant's Motion for Partial Summary Judgment should be granted on both counts.

## FACTS

On October 9, 1973, plaintiff entered into contract No. 39-4-7003-000 with the United States to provide training and support services to "qualified participants" of the Jobs Entry Program under the Manpower Development and Training Act of 1962 (MDTA) Pub.L. No. 87-415, 76 Stat. 23. The contract was signed by Richard Ubl, Program Director of Consortium Venture Corporation and John Nunnery, a contracting officer for the Department of Labor (DOL). The contract required plaintiff to provide orientation, on the job training, and job related education to employee-trainees who were certified as disadvantaged persons. Plaintiff's contractual duties were to be carried out in accordance with MDTA. The contract was to be completed by October 8, 1974, at a cost not to exceed $555,-260.

The contract was modified twice, once on December 28, 1973 and again on June 19, 1974. The December 28, 1973 modification, signed by both parties, increased the time for performance of certain duties that are not pertinent to the outcome of this case. The contract price remained unchanged. On June 19, 1974 the contract was unilaterally modified, this time by Mr. Nunnery, the contracting officer. The unilateral modification reduced the overall number of training slots and decreased the contract price to not to exceed $316,771. All other terms and conditions of the contract re-

---

1. Originally filed as a petition in this court's predecessor, the United States Court of Claims.

2. Defendant's third through seventh counterclaims seek damages of $432,136 against plaintiff under the False Claims Act, 31 U.S.C. 231-

235 for alleged fraudulent actions under a prior contract. Defendant's second counterclaim is an alternate theory of recovery which would be mooted should the court grant Defendant's First Counterclaim.

mained unchanged. Plaintiff alleges it performed fully all of the terms of contract No. 39–4–7003–000 as modified.

From January 14, 1974 to March 5, 1974, defendant made three payments to plaintiff, as required by the contract, which totalled $262,377. On March 19, 1975, plaintiff returned $190,500 [3] at defendant's request, leaving plaintiff with a net payment of $71,877. Plaintiff subsequently submitted to defendant a final tentative invoice showing a balance due plaintiff of $199,746 for work allegedly performed under the contract. Defendant refused to pay the balance and now seeks to compel plaintiff to return the $71,877 previously paid.

## PROCEDURAL HISTORY

Plaintiff filed suit on February 28, 1979, seeking $199,746, the balance allegedly due under the contract, plus interest, or in the alternative, an order requiring defendant's to pay plaintiff for damages incurred. Plaintiff subsequently amended its petition to increase the amount prayed for to $483,-385. Thereafter, defendant, on March 3, 1982, filed its motion for partial summary judgment which was opposed by plaintiff. This case is before the United States Claims Court pursuant to the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25. Jurisdiction is proper under 28 U.S.C. 1491 and 1494.

## DISCUSSION

■ We turn now to defendant's partial motion for summary judgment. Summary judgment is appropriate only where there are no issues of material fact in dispute and judgment is appropriate as a matter of law. *South Louisiana Grain Services, Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982). Upon careful examination of the pleadings and oral arguments, the court concludes, after construing the facts in a light most favorable to plaintiff, that there are no genuine issues of material fact and this action is ripe for summary judgment.

■ At the outset we hold that contract No. 39–4–7003–000 was executed without actual authority. It is well established that the United States is not bound by the unauthorized acts of its agents. *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Lehner v. United States*, 1 Cl.Ct. 408, 415 (1983); *Housing Corporation of America v. United States*, 199 Ct.Cl. 705, 711, 468 F.2d 922, 925 (1972). *See Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). Plaintiff carries the burden to show that the United States is bound by the subject contract. In order to do so, plaintiff must show that defendant's contracting officer had actual authority to bind the government in that regard since the government cannot be bound by any apparent authority of its officers or employees. *Alabama Rural Fire Ins. Co. v. United States*, 215 Ct.Cl. 442, 458–59, 572 F.2d 727, 736 (1978); *Jascourt v. United States*, 207 Ct.Cl. 955, 521 F.2d 1406, *cert. denied*, 423 U.S. 1032, 96 S.Ct. 562, 46 L.Ed.2d 405 (1975); *Penn-Ohio Steel Corp. v. United States*, 173 Ct.Cl. 1064, 1085, 354 F.2d 254, 267 (1965).

■ Defendant's contracting officer purportedly executed the subject contract on October 9, 1973 pursuant to authority vested in him by the Secretary of Labor. Subchapter II of the MDTA, 42 U.S.C. 2581.[4] However, section 2620(a), as amended, provides that "All authority conferred under subchapter II of this chapter shall terminate at the close of June 30, 1973." Defendant argues that section 2620(a) terminated the Secretary of Labor's, and hence the contracting officer's, authority to contract under Subchapter II of MDTA after June 30, 1973. Therefore, Contract No.

---

**3.** No clear reason for the return of the $190,500 to the United States was ever given, however, resolution of that question does not go to the merits of the case, nor does it affect the outcome of this opinion.

**4.** Subchapter II of the MDTA authorized the Secretary of Labor to enter into contracts for on-the-job training and similar services for disadvantaged persons.

39–4–7003–000 which was purportedly executed on October 9, 1973, as well as modifications thereto, were made without actual authority and are, thus, a nullity.

We agree. Accordingly, we hold that in the present case neither the contracting officer nor, for that matter the Secretary of Labor, had the requisite actual authority on October 9, 1973 to execute the contract. Thus, the United States cannot be bound thereby, regardless of plaintiff's allegations to the contrary. Plaintiff proffers three alternative arguments to persuade the court that the contract, as executed, was authorized and is binding on defendant. We find plaintiff's contentions unpersuasive and dispose of them for the reasons set forth below.

Plaintiff first argues that the Joint Resolution (continuing resolution) enacted July 1, 1973, Pub.L. No. 93–52, authorizing continuing appropriations for fiscal year 1974, continued authorization or reauthorized defendant to enter into contracts under Subchapter II of MDTA even after that authority had been expressly terminated on June 30, 1973 by virtue of 42 U.S.C. 2620(a).[5] Section 101(a)(1) of Pub.L. No. 93–52 (continuing resolution) provided as follows:

> Such amounts [shall be appropriated] as may be necessary for continuing projects or activities (not otherwise specifically provided for in this joint resolution) which were conducted in the fiscal year 1973 and for which appropriations, funds, or other authority would be available in the following Appropriation Act for the fiscal year 1974. . . .

Simply stated, plaintiff would have us hold that the July 1, 1973 continuing resolution, as amended, reauthorized the United States to enter into job training and support type contracts after July 1, 1973 pursuant to MDTA and that this authority continued until October 11, 1973, two days after Contract No. 39–4–7003–000 was signed by the parties on October 9, 1973.

We decline to so hold. It is the opinion of this court that the statutory authority to enter into job training and support type contracts under MDTA terminated on June 30, 1973 and was not continued or reestablished by the continuing resolution passed on July 1, 1973 as modified on October 4, 1973. Congress could have very easily given defendant authority to enter into these types of contracts; it did not do so. In the absence of express language reestablishing or continuing that authority, this court is unable to recognize its existence. In our view, Congress did not reestablish authority for this type of program until the Comprehensive Employment and Training Act of 1973 (CETA) Pub.L. No. 93–203, was enacted December 28, 1973. Although our holding may produce a harsh result, we are powerless to do otherwise. It is the province of Congress to create such authorization, not of this court.

■ Plaintiff next argues that under CETA[6] subchapter II of MDTA was retroactively extended from July 1, 1973 to June 30, 1974. To support its position, plaintiff relies on sections 3(a) and 614 of CETA which state in pertinent part:

> Sec. 3.(a). To the extent necessary to provide for orderly transition of supporting job training programs, and to provide continued financial assistance for such

---

5. The continuing resolution, as amended, was to remain in effect, pursuant to section 102 of Pub.L. No. 93–52, until occurrence of one of the following:

   (a) enactment into law of an appropriation for any project or activity provided for in this joint resolution, or
   (b) enactment of the applicable Appropriation Act by both Houses without any provision for such project or activity, or
   (c) October 11, 1973, whichever first occurs. Section 102(c), which initially read "September 30, 1973," was amended by Pub.L. No. 93–118 on October 4, 1973 to read "October 11, 1973".

6. CETA vested authority in the Secretary of Labor as of the date of enactment to enter into job training and support type contracts; but this authority was not delegated to the Assistant Secretary of Manpower until March 12, 1974, and certainly not to the contracting officer until at least that time. *See* 39 Fed.Reg. 9586 (March 12, 1974). There is no indication in the record as to when, or if, the authority was redelegated, however, again, this lack of information does not go to the result of this case.

programs, prior to July 1, 1974, the Secretary is authorized to provide financial assistance in the same manner and on the same conditions as provided in the Manpower Development and Training Act of 1962, as in effect prior to June 30, 1973 ...

\* \* \* \* \* \*

Sec. 614. Effective with respect to fiscal years after June 30, 1974, the Manpower Development and Training Act of 1962 ... [is] repealed.

Again we decline to adopt plaintiff's position. We hold that sections 3(a) and 614 of CETA do not retroactively extend the authority under MDTA from June 30, 1973 to June 30, 1974 as plaintiff contends. Those sections merely provide for the continued funding of MDTA-type programs already established before June 30, 1973 to insure an orderly transition of the programs through June 30, 1974. As we concluded above, authority to enter into job training and support type contracts under MDTA terminated on June 30, 1973. That authority was not reestablished until the enactment of CETA on December 28, 1973. There are indications in the record that individual members of Congress recognized this problem and attempted action to forestall the six-month gap in defendant's authority to enter into MDTA-type contracts; however, those efforts failed.

■ Plaintiff argues finally, in essence, that the December 28, 1973 modification and/or the June 19, 1974 modification served to revitalize the October 9, 1973 contract. We disagree. Federal Procurement Regulation 41 C.F.R. 1–1.405 governs this type of situation and treats it as an attempt to ratify a previously unauthorized contract.[7] The regulation provides as follows:

§ 1–1.405 *Ratification of unauthorized contract awards.*

Execution of otherwise proper contracts made by individuals without contracting authority, or by contracting officers in excess of the limits of their delegated authority, may be later ratified. To be effective, such ratification must be in the form of a written document clearly stating that ratification of a previously unauthorized act is intended and must be signed by a person authorized to ratify such acts. Generally such ratification may be made only by an official on whose behalf the contract was made and then only: (a) If he could have given authority to enter into the contract before it was awarded and (b) if he still has power to do so at the time of ratification.

Even though programmatic authority was restored by CETA on December 28, 1973 the contracting officer's signing of the contract modifications discussed above and the making of partial payments were legally insufficient to ratify the contract. The modifications do not clearly state nor do they even hint that ratification of a previously unauthorized act was intended and neither the Secretary of Labor nor the contracting officer could have "given authority to enter" into contract No. 39–4–7003–000 on October 9, 1973. That authority had been terminated under MDTA on June 30, 1973 and was not reestablished under CETA until December 28, 1973. Thus, plaintiff's contention that the alleged modifications constitute a ratification of the contract is without merit.

In summary, the contract entered into on October 9, 1973 was executed by an officer of the United States who did not possess the actual authority to do so and, therefore, the contract is not binding on the United States. Neither the continuing resolution of July 1, 1973, as amended nor the enactment of section 3(a) of CETA, applied retroactively, reestablished that authority as of October 9, 1973. Moreover, the alleged modifications to the original contract executed on December 28, 1973 and June 19, 1974 failed to ratify the original contract as they failed to satisfy the requirements of 41 C.F.R. 1–1.405 (ratification of an unauthorized contract).

■ We turn now to Defendant's First Counterclaim. Defendant seeks return of

7. The regulation applies generally to all government procurement contracts and DOL has made reference to and incorporated 41 C.F.R. 1–1.405 in its own regulations. *See* 41 C.F.R. 29–1.405.

the $71,877 partial payment made to plaintiff under the unauthorized contract. It is well settled that the government has inherent authority to recover funds which its agents have wrongfully, erroneously or illegally paid, and that it cannot be estopped from doing so by the mistakes of its officers or agents. *United States v. Wurts*, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938); *Aetna Casualty and Surety Company v. United States*, 208 Ct.Cl. 515, 520, 526 F.2d 1127, 1130 (1975) *cert. denied* 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976). Accordingly, we hold that defendant is entitled to a return of any monies mistakenly paid to plaintiff pursuant to the contract.[8]

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Partial Summary Judgment on defendant's sixth affirmative defense and first counterclaim is granted and defendant is entitled to recover $71,877 erroneously paid to plaintiff without interest.

IT IS SO ORDERED.

---

[8] The court has granted Defendant's Motion for Summary Judgment on its first counterclaim with full knowledge of the existence of Plaintiff's Motion to File an Election to Proceed Under the Contract Disputes Act filed January 6, 1984. Defendant, on February 6, 1984, filed a Motion to Suspend consideration of plaintiff's January 6, 1984 motion, which the court granted. The court is of the opinion that defendant's right to recover funds paid under a mistake of fact is an inherent right supported by case law and not subject to the Contract Disputes Act. *See, Maryland Small Business Development Financing Authority v. United States*, 4 Cl.Ct. 76 (1983).