**APPLIED COMPANIES,**
Plaintiff–Appellant,

v.

**UNITED STATES, Defendant–Appellee**

No. 97–5085.

United States Court of Appeals,
Federal Circuit.

May 27, 1998.

Peter B. Jones, Jones & Donovan, of Irvine, California, argued for the plaintiff-appellant.

Harold D. Lester, Jr., Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued, for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director. Of counsel on the brief was Major Daniel Key, Army Litigation Division, Department of the Army, of Arlington, Virginia.

Before PLAGER, LOURIE, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This case concerns the law of setoffs. The dispute began when the government made two overpayments to Applied Companies, a government contractor. Applied agreed that it was obligated to repay the money, but instead of repaying it directly, Applied sought to set off the debt against obligations the government owed to it on other contracts. The government rejected Applied's proposals and instead discharged Applied's debt by setting it off against the amount the government had agreed to pay Applied pursuant to a termination settlement agreement on another contract. Applied objected to the setoff and sued in the Court of Federal Claims to recover the funds that were withheld from the proceeds of the termination settlement agreement. The Court of Federal Claims rejected Applied's challenge to the government's setoff. *Applied Cos. v. United States,* 37 Fed. Cl. 749 (1997). We affirm.

I

This case has a complicated factual background, the details of which are set forth in

the thorough opinion prepared by the trial judge. *See Applied Cos.*, 37 Fed. Cl. at 751–55. Applied entered into several contracts with the government to supply air conditioning units. One of those contracts, Contract No. 0058, was terminated for default by the government. The Armed Services Board of Contract Appeals converted the default termination into a termination for the convenience of the government, and the parties negotiated a termination settlement agreement. Under the terms of the settlement, the government agreed to pay Applied $2,818,931.34 to resolve all claims from the terminated contract.

The government, however, did not pay Applied that sum, but instead paid only $911,604.11. That sum was paid to Comerica Bank, to which Applied had assigned the proceeds of Contract No. 0058 as partial collateral for a loan. The government used the remainder to offset two overpayments that the government had previously made to Applied on another contract, Contract No. C072, three years earlier.

The overpayments on Contract No. C072, which were apparently the product of a computer error, resulted in a total excess payment to Applied of $1,399,005.19. Applied promptly notified the government of the overpayments, but instead of returning the money, Applied proposed several arrangements to discharge the debt by crediting the overpayments against other outstanding government obligations to Applied. The government did not accept any of Applied's proposals, but insisted on direct repayment. Applied did not return the overpayments, and the government ultimately chose to recoup the overpayments by offsetting them against the sum the government agreed to pay Applied in connection with the settlement of Contract No. 0058. Applied protested the setoff, but the contracting officer denied the protest.

Applied sought review of the government's actions in the Court of Federal Claims, arguing that the setoff violated the terms of the settlement agreement on Contract No. 0058 and was improper for other reasons as well. The Court of Federal Claims rejected each of Applied's arguments and granted summary judgment in favor of the government. First, the court held that the termination settlement agreement did not bar the setoff, because nothing in the agreement deprived the government of its common law setoff right. Second, the court rejected Applied's argument that it had previously retired its debt to the government by setting it off against obligations the government owed Applied on other contracts. The court found that Applied had "not established that at the time the government properly exercised its setoff rights [Applied] had previously exercised a valid setoff." Third, the court held that the government's setoff did not have to be predicated on the final decision of a contracting officer, because the government's right to recover the overpayment was not subject to the Contract Disputes Act. Finally, the court rejected Applied's argument that the Assignment of Claims Act of 1940, 31 U.S.C. § 3727 and 41 U.S.C. § 15, barred the government from taking a setoff against the funds in the termination settlement agreement. The "no-setoff" provision of the Assignment of Claims Act, the court explained, was intended to protect assignees and therefore was not enforceable by an assignor such as Applied.

II

Applied first argues that it retired the overpayment debt well before the government took its setoff, and that it did so by offsetting the overpayment debt against contract obligations the government owed to Applied under Contract No. B013, a separate contract for air conditioning units. The trial court rejected that argument, and we uphold the court's ruling on that issue.

The record of correspondence between Applied and the government concerning the overpayment debt indicates that the matter remained unresolved until the government's setoff of the settlement proceeds. Applied wrote four letters between April 1992 and July 1992 notifying the government of its

intention to discharge the overpayment debt by crediting it against the government's obligations on various contracts with Applied. In three of those letters, Applied proposed to credit the overpayments against its claim on Contract No. 0058 and asked for the government's acquiescence in that arrangement. The government responded that it did not agree to Applied's proposed crediting plan and demanded immediate repayment.

In May 1993 the government wrote a letter informing Applied that more than $96,000 in interest had accrued on the overpayments and offering Applied the alternative of entering into an installment plan to discharge the debt. Applied responded by requesting a "Deferred Payment Agreement," which would have allowed the government to offset the overpayments against the settlement of various contract claims that Applied had filed against the government. Again, the government declined Applied's proposal.

On August 28, 1993, Applied sent the government the results of its "payment analysis" of two contracts, Contract No. C072 and Contract No. B013. Applied's analysis showed that the government owed it a balance of $21,905.02 on the two contracts. Applied derived that amount by crediting the government with the original overpayment on Contract No. C072, subtracting unpaid amounts on that contract, and subtracting an additional $1,280,349.19 that Applied claimed was the outstanding balance the government owed on Contract No. B013. In effect, Applied proposed that the overpayment be set off against amounts owed to Applied on the C072 and B013 contracts. In the Court of Federal Claims, Applied also submitted the declaration of its Chief Financial Officer, Kent Fortin, who averred that he had actually made the claimed setoff between Contract No. C072 and Contract No. B013 in July 1992, more than a year before the August 1993 letter.

On August 30, 1993, two days after the letter containing the payment analysis, Applied wrote the government and proposed to release the government from Applied's claims on yet another contract, Contract No. A080, "in return for which our obligation to return the alleged 'overpayment' will be dropped." The government again declined Applied's offer. Applied's final proposal, in letters sent in May 1994 and July 1994, offered again to set off the overpayments against the government's liability to Applied on Contract No. 0058, which by that time had been converted to a termination for convenience. Ultimately, of course, the government did just that by withholding the overpayment, plus interest, from the Contract No. 0058 termination settlement.

After summarizing that evidence, the trial court concluded that Applied had failed to establish that it offset the overpayments under Contract No. C072 against the government's alleged debt under Contract No. B013. We agree. Although Applied's letters to the government consistently expressed an intention to resolve the overpayment issue through the use of a setoff, Applied did not offer evidence sufficient to show that it had actually taken a setoff.

■ As the Supreme Court recently explained, a valid setoff requires "(i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff." *Citizens Bank v. Strumpf,* 516 U.S. 16, 19, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). The setoff must be permanent and result in a complete extinguishment of the other party's debt. *See Amoco Prod. Co. v. Fry,* 118 F.3d 812, 818 (D.C.Cir.1997).

■ Applied's correspondence with the government is irreconcilable with its current contention that in mid–1992 it effected a permanent setoff that satisfied the applicable legal standard. On several occasions after 1992, Applied suggested methods of dealing with the overpayments that were entirely inconsistent with its present claim that it had already taken a setoff against Contract No. B013. At one point, the government even requested that Applied inform it of any setoffs that Applied had taken against other contracts, offering to "reduce the amount of

[Applied's] indebtedness accordingly" if subsequent investigation bore out Applied's claims. In response, Applied did not assert that it had set off the overpayments against Contract No. B013, nor did it supply records to show that any other setoff had been taken. Nor did Applied offer any accounting records in the trial court to support its setoff argument. To the contrary, the record of correspondence before the court demonstrated that Applied had never acted to make its alleged setoff permanent or released the government from its corresponding obligations under Contract No. B013.

■ In light of the strong documentary evidence supporting the government's contention that Applied never set off the overpayment debt against any particular contract obligation and the absence of evidentiary support for Applied's argument, Mr. Fortin's affidavit alone is insufficient to create a genuine issue of material fact. It is well settled that "a conclusory statement on the ultimate issue does not create a *genuine* issue of fact." *Imperial Tobacco Ltd. v. Philip Morris, Inc.,* 899 F.2d 1575, 1581 (Fed.Cir.1990). We therefore agree with the trial court's decision rejecting Applied's contention that it had already set off its obligation to the government before the government exercised its setoff right against the proceeds of the termination settlement agreement.

### III

■ Applied's second argument is that the government violated the terms of its termination settlement agreement on Contract No. 0058 when it set the overpayment obligation off against the amount the government agreed to pay Applied under that settlement agreement. Applied argues that when the government agreed to "pay" the full amount of the settlement agreement, it could not then reduce that sum by the amount of the setoff. The short answer to that contention is that an agreement to "pay" a certain amount does not bar the government from exercising its common law right of setoff against the agreed-to obligation. Applied

could have negotiated to bar the government from exercising its setoff right against the proceeds of the termination settlement agreement, but it did not. We are aware of no principle of contract law that would justify prohibiting the government from exercising its setoff right against the settlement agreement proceeds any more than against any other obligation by the government to a party that owed the government money in return.

■ Applied argues that the government's action was contrary to a provision of the Federal Acquisition Regulation and must be invalidated on that ground as well. The provision in question, 48 C.F.R. § 49.109–1, states that a termination settlement agreement "shall cover any setoffs that the Government has against the contractor that may be applied against the terminated contract." Applied contends that because the payment provision of the termination settlement agreement in this case did not reflect any setoff for the overpayment debt, the FAR provision bars the government from reducing the amount of the payment under the agreement by the amount of the overpayment debt. The government responds that the FAR provision is meant to refer only to setoffs of sums under the terminated contract, rather than to any setoff that the government may have against the contractor, from whatever source.

We find the government's interpretation of the FAR provision more persuasive. Adopting Applied's interpretation would require the termination contracting officer to ascertain whether the contractor has any outstanding debt to the government on any other contract before concluding a settlement agreement. Leaving aside the question whether the termination contracting officer has the authority to settle debts arising from separate contracts, such a system would impose an onerous burden on the termination contracting officer, whose knowledge is generally limited to the single contract at hand.

The standard termination settlement agreement contained in the FAR also sup-

ports the government's interpretation. The FAR provision setting forth the termination settlement agreement, 48 C.F.R. § 49.603–1, calls for the termination contracting officer to arrive at a net settlement amount by subtracting certain deductions from the gross settlement amount. Those deductions include partial or progress payments previously made to the contractor, property disposal credits, and "other amounts due the Government *under this contract.*" 48 C.F.R. § 49.603–1(b) (emphasis added). The regulation makes no reference to setoffs from other contracts. The express limitation in the regulation to setoffs under the terminated contract convinces us that the FAR provision does not require termination contracting officers to include setoffs arising from different contracts between the same contractor and the government.

■ Finally, Applied argues that both the termination contracting officer and Applied's representative intended that the termination settlement agreement not be subject to setoffs and that by setting off the overpayment debt against the proceeds of the agreement, the government violated the intention of the parties to the agreement. The agreement, however, was integrated and contained no prohibition against setoffs. There is no reason to read an implied prohibition against setoffs into the agreement, as it is well settled that the government retains its setoff right unless there is some explicit statutory or contractual provision that bars its exercise, which is not the case here. *See United States v. Munsey Trust Co.,* 332 U.S. 234, 239, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *Marre v. United States,* 117 F.3d 297, 302 (5th Cir.1997).

## IV

Applied next contends that because it had executed an assignment of its rights to the proceeds of Contract No. 0058 to Comerica Bank prior to the settlement, the government was barred from exercising a setoff against the amount to be paid under the settlement. Applied relies on the Assign-

ment of Claims Act of 1940, which restricts the government's right to set off funds that are to be paid to an assignee. *See* 31 U.S.C. § 3727; 41 U.S.C. § 15.

In November 1994, Applied consolidated a number of existing debts into a single revolving credit loan with Comerica Bank. Applied agreed to assign the proceeds of Contract No. 0058 to Comerica as partial collateral for the loan. Pursuant to that agreement, Applied completed and filed a notice of assignment, which was acknowledged by the government, instructing that all payments due to Applied under Contract No. 0058 should be paid directly to Comerica.

Following the settlement agreement in March 1995, the government paid the settlement amount, less the amount subtracted pursuant to the setoff, directly to Comerica. The bank did not challenge the government's setoff, and Applied repaid its entire outstanding balance to Comerica several months later. Comerica has disclaimed any interest in this litigation.

■ The Court of Federal Claims held that Applied could not rely on the Assignment of Claims Act, because the benefits under that statute run only to assignees. Applied admits that no reported cases have allowed an assignor to enforce an assignee's right to prevent the government from setting off a debt owed by the assignor. Applied argues, however, that "contractors must be able to enforce their own contracts" and that Applied is entitled to prevent a setoff of the settlement proceeds of Contract No. 0058.

■ The Assignment of Claims Act seeks to encourage the private financing of government contracts by creating specific exceptions to the general rule that forbids the assignment of claims against the government. The clause that prevents setoffs from being taken against payments to an assignee is an additional incentive to assure lenders that proceeds from government contracts may be used as a reliable source of collateral. *See Central Bank v. United States,* 345 U.S. 639, 643, 73 S.Ct. 917, 97 L.Ed. 1312 (1953).

As the language of the statute suggests, the benefit is one that accrues to assignees. *See* 41 U.S.C. § 15(f) ("payments to be made thereafter to an assignee of any moneys due or to become due under such contract shall not be subject to reduction or setoff"). The protection against setoffs, moreover, is necessarily a limited one tied to the assignee's interest in the collateral. *See First Nat'l City Bank v. United States,* 212 Ct.Cl. 357, 548 F.2d 928, 934–35 (1977) ("Congress did not, we think, wish to eat into the Government's normal right of setoff against the assignor more than would be necessary to induce such monetary aid in [financing contracts].").

■ Comerica's interest in the proceeds of Contract No. 0058 as collateral for Applied's loans ceased when Applied repaid its loans. The general rule is that "an assignment made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liabilities secured." *Beaconwear Clothing Co. v. United States,* 174 Ct.Cl. 40, 355 F.2d 583, 590 (1966). The assignment in favor of Comerica was therefore released upon repayment of Applied's debt.

■ With the extinguishment of Comerica's interest in the collateral, the prohibitions against setoffs in the Assignment of Claims Act became unenforceable. The no-setoff clause confers no independent rights outside of the context of a valid assignment to secure an existing debt. *See American Nat'l Bank & Trust Co. v. United States,* 22 Cl.Ct. 7, 13 (1990) ("[E]ven assuming that the United States had breached a valid assignment with plaintiff, [in the absence of an outstanding debt] plaintiff would not be entitled to recover any damages."). Consequently, the retirement of Applied's debt to Comerica and release of the assignment of the proceeds of Contract No. 0058 mooted the attendant terms of that assignment, including the no-setoff clause. We do not need to decide whether an assignor might be able to bring suit to enforce the no-setoff provision of the Assignment of Claims Act when the debt is still outstanding and the assignment remains in effect. For this case, it is sufficient to hold that Applied cannot seek to rescind a setoff by relying on the terms of an assignment that has already been released.

Applied argues that such a result effectively penalizes it for being solvent and able to repay its debt to Comerica. Applied's obligations, however, were not contingent on the enforceability of the no-setoff provision. Applied was required to repay Comerica whether or not the government applied a setoff against the settlement funds. In essence, Applied's complaint is that Comerica did not pursue the remedy that was granted to it by the Assignment of Claims Act, and instead sought recovery directly from Applied. That is a choice that the law gave Comerica, and Applied cannot complain because Comerica did not exercise the option that Applied would have preferred.

V

Applied's final argument is that the government's setoff was improper because the government failed to comply with the procedures of the Contract Disputes Act, 41 U.S.C. §§ 601–613, before recouping the amount of the overpayments from the settlement. Specifically, Applied argues that the government was required to obtain a final decision from the contracting officer before taking a setoff.

■ The "comprehensive procedures" of the Contract Disputes Act govern the resolution of contract disputes that arise between the government and contractors. *See Cecile Indus., Inc. v. Cheney,* 995 F.2d 1052, 1055 (Fed.Cir.1993). As Applied notes, the Act provides that "[a]ll claims by the government relating to a contract shall be the subject of a [final] decision by the contracting officer." 41 U.S.C. § 605(a). There was no final decision by a contracting officer in this case prior to the setoff from the settlement with Applied. Before we can conclude that the government violated the Contract Disputes Act, however, we must decide whether the setoff

to recoup the erroneous overpayment can fairly be characterized as a claim "relating to a contract."

Although the Contract Disputes Act does not define the class of government claims that "relat[e] to a contract," the Federal Acquisition Regulation describes various types of "contract debts" that may be asserted by the government. *See* 48 C.F.R. § 32.602. The list includes "overpayments related to errors in quantity or billing or deficiencies in quality." 48 C.F.R. § 32.602(d). Applied claims that the computer error in this case was an overpayment related to billing and that the setoff was therefore a claim relating to that contract debt.

 We do not agree that a government claim arising from a computer error creates a claim relating to a contract. Congress's decision to limit the applicability of the Act's procedures to those claims "relating to" a contract indicates that the claim at issue must have some relationship to the terms or performance of a government contract. The overpayments resulting from the computational error in this case have no such relationship. Applied did not invoice the government for the credited amounts, nor did the government intend to pay Applied those sums for its work under the contract. Instead, as both sides agree, the additional payments appear to have resulted from the insertion of an extra digit in the checks the government sent to Applied. The government may recover erroneous payments of that kind without recourse to the procedures of the Contract Disputes Act. *See Aetna Cas. & Sur. Co. v. United States*, 208 Ct.Cl. 515, 526 F.2d 1127, 1130 (1975); *Consortium Venture Corp. v. United States*, 5 Cl.Ct. 47, 52 (1984), *aff'd*, 765 F.2d 163 (Fed.Cir.1985).

 Forcing the government to comply with the Contract Disputes Act procedures in order to reclaim an erroneous overpayment would not serve any of the purposes underlying the Act. The Contract Disputes Act was intended primarily to create opportunities for informal dispute resolution at the contracting officer level and to provide contractors with clear notice as to the government's position regarding contract claims. *See* S.Rep. No. 95–1118, at 1 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5235. Neither of those concerns are implicated in the case of overpayments such as the ones at issue in this case. There is no dispute as to the government's entitlement to the return of the mistaken overpayments, and Applied was at all times fully aware of the government's position regarding repayment. Accordingly, the government did not need to obtain a contracting officer's final decision regarding its entitlement to the erroneous overpayments before setting off the debt against the settlement with Applied.

*AFFIRMED.*