# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| AeroVironment, Inc. ) | ASBCA Nos. 58598, 58599 |
| ) | |
| Under Contract No. W58RGZ-05-C-0338 ) | |

APPEARANCES FOR THE APPELLANT: James J. Gallagher, Esq.
Mary E. Buxton, Esq.
  Pillsbury Winthrop Shaw & Pittman LLP
Los Angeles, CA

APPEARANCES FOR THE GOVERNMENT: E. Michael Chiaparas, Esq.
  DCMA Chief Trial Attorney
Srikanti Schaffner, Esq.
Carol L. Matsunaga, Esq.
  Trial Attorneys
  Defense Contract Management Agency
  Carson, CA

## OPINION BY ADMINISTRATIVE JUDGE PEACOCK ON APPELLANT'S MOTION TO DISMISS AND THE GOVERNMENT'S MOTION TO AMEND PLEADINGS

AeroVironment, Inc. (appellant or AV) has filed a motion to dismiss the captioned appeals. AV alleges that all government claims disallowing costs (ASBCA No. 58599) and assessing penalties for inclusion of alleged expressly unallowable costs (ASBCA No. 58598) related to appellant's final incurred cost proposal for fiscal year (FY) 06 were resolved by settlement or payment and accordingly are moot. The government opposes dismissal and has filed a motion for approval to file amended answers (motion to amend) in both appeals allegedly to clarify the scope of its claims asserted in the contracting officer (CO) decisions from which these appeals were taken. Appellant alleges, *inter alia*, that the proposed amendments of the pleadings constitute new government claims beyond the scope of those asserted in the final decisions and are therefore beyond the Board's jurisdiction to address. We grant appellant's motion to dismiss and deny the government's motion to amend.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

1. On 22 February 2013, the Defense Contract Management Agency (DCMA or government) administrative contracting officer (ACO) issued two final decisions regarding AV's FY 06 final incurred cost proposal (ICP), dated 20 September 2006. One final decision (the Unallowability decision) disallowed various costs totaling

$1,857,114. The amounts disallowed included over-cap executive compensation totaling $1,169 and misallocated taxes totaling $1,022,000, precisely in accordance with the conclusions in an underlying audit report prepared by the Defense Contract Audit Agency (DCAA). The Unallowability decision demanded repayment of all disallowed costs. (ASBCA No. 58599 (58599) R4, tab 4)

2. The second final decision (the Penalty decision) determined the disallowed compensation and tax costs to be expressly unallowable and assessed corresponding penalties of $429 for the $1,169 over-ceiling executive compensation costs and $455,812 for the misallocated taxes (both as determined in the DCAA audit report). The Penalty decision demanded payment of those amounts plus the associated interest component of the penalty under FAR 42.709. (ASBCA No. 58598 (58598) R4, tab 4)

3. On 21 March 2013, AV timely appealed each decision. The appeal from the Penalty decision was docketed as ASBCA No. 58598 (sometimes referenced herein as the Penalty appeal) and the appeal from the Unallowability decision was docketed as ASBCA No. 58599 (sometimes referenced herein as the Unallowability appeal).

4. On 29 April 2013, AV filed its complaint in the Unallowability appeal averring in pertinent part:

> **VIII. AV'S FY 06 EXECUTIVE COMPENSATION COSTS DO NOT EXCEED THE CEILING ESTABLISHED BY FAR § 31.205-6**
>
> 35. In the Final Decision, the Government alleges that $1,169 in AV's FY 06 executive compensation costs exceed the ceiling for such costs established at FAR § 31.205-6(p).
>
> 36. AV's FY 06 executive compensation costs do not exceed the ceiling for such costs established at FAR § 31.205-6(p).

(58599, compl. at 8)

5. On 30 May 2013, the government filed its answer in the Unallowability appeal admitting the above allegations in the complaint, paragraph 35, "to the extent supported by the referenced Final decision" and alleging that the averments in the complaint, paragraph 36, stated conclusions of law and denying them to the extent that they may be deemed factual allegations (58599, answer at 5).

6. On 29 April 2013, appellant also filed its complaint in the Penalty appeal. As pertinent to our decision, the following sections of the complaint address the penalty related to alleged over-ceiling executive compensation costs:

> ### VII. AV'S FY 06 EXECUTIVE COMPENSATION COSTS DO NOT EXCEED THE CEILING ESTABLISHED BY FAR § 31.205-6
>
> 25. In the Final Decision, the Government alleges that AV is liable for the impact of its inclusion of $1,169 in FY 06 executive compensation costs that allegedly exceed the ceiling for such costs established at FAR § 31.205-6(p).
>
> 26. AV's FY 06 executive compensation costs do not exceed the ceiling for such costs established at FAR § 31.205-6(p).
>
> ### VIII. EVEN IF AV'S FY 06 EXECUTIVE COMPENSATION COSTS HAD EXCEEDED THE CEILING ESTABLISHED BY FAR § 31.205-6, THE GOVERNMENT MUST WAIVE THE PENALTY
>
> 27. Under FAR § 42.709-5(b), even if the Government's calculation of AV's FY 06 executive compensation costs was correct, and those costs exceeded the ceiling established at FAR § 31.205-6(p), which AV does not concede, the Government is required to waive the penalty because the allegedly expressly unallowable executive compensation costs at issue are less than $10,000.

(58598, compl. at 6-7)

7. On 30 May 2013, the government also filed its answer in the Penalty appeal admitting the allegations in the complaint, paragraph 25, "to the extent supported in the referenced Final Decision" but otherwise denying paragraphs 25 through 27.

8. Following the filing of the pleadings in both appeals, the parties requested an approximate 11-month suspension of proceedings in both appeals and engaged in settlement discussions.

9. By letter dated 23 April 2014, the parties advised the Board that they had reached a partial settlement of the disputed issues in the Unallowability appeal and

requested that the suspension of the appeals be terminated to address the following remaining issues excepted from the settlement:

2. Unresolved Issues in ASBCA No. 58599:

    a. Executive Compensation Costs In
       Excess of FAR 31.205-6(p) Cap       --   $1,169

3. Unresolved Issues in ASBCA No. 58598:

    a. Penalty per FAR 42.709 on Inclusion of
       Expressly Unallowable Federal Income Tax
       Cost of $1,022,000 in Indirect Cost Claim--$455,812

    b. Penalty per FAR 42.709 on Inclusion in
       Indirect Cost Claim of $1,169 in Executive
       Compensation Costs in Excess of
       FAR 31.205-6(p) Cap           --   $429

    c. Interest on Penalties         --   $118,622.66

4. None of the issues in ASBCA No. 58598 were resolved by the parties.

10. On 14 August 2014, the parties executed a partial settlement agreement (First PSA). The First PSA stated in part:

> [T]he Parties continue to dispute FY 06 executive compensation costs which the Government alleges are in excess of the cap established by FAR 31.205-6(p). Accordingly, the Parties hereby reserve their respective rights to litigate this issue before the ASBCA under Appeal No. 58599. The Parties also recognize that there are separate, unresolved penalties and interest issues pending in ASBCA No. 58598 related to the inclusion of overceiling executive compensation and federal income tax expenses in [AV's] FY 2006 Incurred Cost Submission.

(Gov't opp'n, ex. G-1 at 4-5, ¶ 6)

11. The appeals were consolidated by the Board. The parties elected Board-assisted mediation of the unsettled issues and entered into an Alternative Disputes Resolution (ADR) agreement detailing procedures for the conduct of the ADR mediation.

4

12. In its mediation filings and during a teleconference immediately prior to the conduct of the mediation, the government trial attorney (GTA) raised additional matters regarding the over-ceiling executive compensation amounts that resulted in an increase in the over-cap executive compensation costs claimed by the government from the $1,169 set forth in the CO's Unallowability decision to $97,828 now asserted to be due according to the GTA, along with a corresponding increase in the penalty from $429 (CO's Penalty decision) to $35,903 now claimed to be due by the GTA, exclusive of interest. Appellant objected to the GTA's proposed revisions of the government claims asserting that they represented a new claim, the assertion of which was time-barred by the CDA six-year statute of limitations.

13. After discussing the matter between the parties prior to the ADR, the presiding judge concluded that new matters were raised by the GTA's computations that involved extensive additional factual and legal issues and that it was apparent that neither party was prepared to thoroughly address or resolve these matters in the ADR process. Because of the impasse between the parties regarding matters related to executive compensation and the associated penalty, executive compensation issues were excluded from the scope of the ADR proceedings.

14. The ADR successfully resolved all issues associated with the government's claimed tax penalty (including interest). On 12 May 2015, the parties executed a second partial settlement agreement (Second PSA) reflecting their resolution of the government's tax penalty claim and appellant's agreement to remit payment of the settlement amount to the government (gov't opp'n, ex. G-2). The Second PSA again stated, as summarized below, that the only matters excepted from the scope of the, previous 14 August 2014, First PSA were:

> 1. The penalty assessed and claimed under FAR 42.709 in the amount of $455,812 as a result of the inclusion of $1,022,000 of federal taxes in AV's FY 06 final indirect cost submission, exclusive of interest [later resolved during the ADR];
>
> 2. Executive compensation costs of $1,169 in excess of the FAR 31.205-6(p) ceiling;
>
> 3. A penalty per FAR part 42.709 in the amount of $429 for the inclusion in its FY final indirect cost submission of the $1,169 exceeding the executive compensation cap exclusive of interest; and,
>
> 4. The interest component of the aforementioned penalties in the claimed amount of $118,622.66.

5

15. On 4 June 2015, AV filed a motion to dismiss the appeals with prejudice "on the basis that all claims pending before this Board...have been resolved" inasmuch as the government claims had been satisfied by: 1. payment of the amount agreed to in the 12 May 2015 Second PSA related to the tax penalty; and, 2. subsequent remission of payment to the government of the full amount demanded and claimed ($429) by the CO in her Penalty decision, along with associated interest of an additional $111.64. Accordingly, appellant alleged that all matters that were the subject of the disallowance and penalty assessments were concluded and the appeals were therefore moot.[1]

16. On 6 July 2015, the government filed an opposition to appellant's motion to dismiss (opposition) and an accompanying motion to amend. In its opposition, the government contends that, "The parties have not resolved the issue of the unallowable executive compensation costs that exceed the statutory cap, which was the subject of ASBCA No. 58599." The opposition asserts that the unallowable executive compensation costs were excluded and reserved for further litigation in the First PSA. It further maintains that the government, "has never agreed to accept [appellant's payment of the $560.64 for the penalty including interest] in satisfaction of its claim, and AV was aware, prior to making the payment, that the Government had revised upwards the amount it believed AV had been overpaid for executive compensation" subject to penalty. (Gov't opp'n at 3-4)

17. In its motion to amend of 6 July 2015, the government requested that it be permitted to amend its answers in each appeal to increase the over-ceiling executive compensation amount determined by the CO from $1,169 to $97,828 as well as increase the corresponding penalty from $429 to $35,903 (plus interest). The basis for the increase, sometimes referenced herein as the proration methodology, may be summarized as follows (gov't mot. at 8-9):

a. AV's FY 2006 was 1 May 2005 to 30 April 2006.

---

[1] Although not expressly stated therein, we construe the motion to dismiss and associated payment of the penalty as an implicit concession by appellant that the CO's disallowance in the Unallowability decision of $1,169 (upon which the $429 penalty was based) in over-cap executive compensation was correctly computed and is no longer disputed. Stated differently, necessarily subsumed within the concession that AV owes the government a $429 penalty imposed for the inclusion of *expressly* unallowable over-cap executive compensation costs in its indirect cost submission, is the lesser concession that the associated $1,169 for over-cap executive costs were unallowable and properly disallowed by the CO. The government has made no contention that the Unallowability appeal should not be dismissed on the basis that the $1,169 disallowed in the Unallowability decision remains in dispute.

6

b. Because AV's FY spanned two calendar years, the applicable pay cap for each year must be prorated as the GTA interpreted FAR 31.205-6(p). In other words, the cap for 2005 should be used to determine maximum allowability for the first eight months falling within calendar year 2005 and the cap for 2006 should be used for the final four months of AV's FY 06 falling within calendar year 2006.

c. The GTA asserts that the ACO "erroneously relied upon the 2006 calendar year benchmark to determine that AV exceeded the cap for its 2006 fiscal year" (*id.* at 9).

d. Therefore, the GTA'S proposed revisions correct the ACO's "erroneous" calculations of unallowable over-ceiling executive compensation.

e. Moreover, because the revised over-cap compensation claim represented an "expressly unallowable" cost according to the GTA, a commensurate increase in the penalty originally demanded by the ACO pursuant to FAR 42.709 is also appropriate.

18. The proration methodology was developed by DCAA's Mid-Atlantic Region Compensation Team (MAR) after its review of appellant's executive compensation (app. resp. to gov't opp'n, ex. 1). The MAR's opinions were furnished to and considered by the cognizant DCAA auditor prior to issuance of her 31 October 2008 audit report regarding AV's FY 06 ICP. The MAR's methodology was rejected by the DCAA auditor in her working papers for the following reasons:

Based on our evaluation of the MAR results, we take exception to the pro-rated FAR Compensation Limit utilized by MAR to evaluate the allowability portion of the claimed FY 2006 executive compensation costs based on FAR 31.205-6(p)(3)(iii) Compensation for Personal Services.

FAR 31.205-6(p)(3)(iii) Compensation for Personal Services, which says:

"Fiscal Year" means the fiscal year established by the contractor for accounting purposes".

7

> Therefore, it is unreasonable to pro rate the FAR
> Compensation Limit per the Calendar Year when the
> contractor[']s fiscal year runs May 31 to April 30.

(App. mediation reply br., ex. 7) As noted above, the CO in her final decision adopted the auditor's conclusions in the audit report. The CO made no mention of the MAR proration methodology in the final decision.

19. On 24 July 2015, appellant filed responses to the government's opposition and motion to amend reasserting, *inter alia,* that both appeals should be dismissed and that the government's motion to amend should be denied. In summary, appellant challenged the government's proration methodology and interpretation of FAR 31.205-6(p) contending that neither the regulation, nor the legislation on which it is based, requires proration of the executive compensation cap as alleged by the GTA. Moreover, appellant argued in its responses that the motion to amend should be denied because the GTA's proposed amendment of its answer would constitute a new government claim that had not been the subject of a CO decision and therefore was beyond our jurisdiction to decide.

20. On 21 August 2015, the government filed replies to appellant's responses contending, *inter alia,* that it would demonstrate that proration is required by regulation and that the proposed amended answers did not assert a new claim. With respect to its motion to amend, the government's reply stated, "Amendment of the Answer to include the Counterclaim is requested to provide formal notice to AV of the revised amount of unallowable executive compensation costs based on the Government's revised legal position" (reply at 1). Because we determine that the proposed amendments assert new government claims that we lack jurisdiction to resolve, we do not reach or address the parties' arguments regarding FAR 31.205-6(p) and the merits of the government's proposed proration methodology.

## DECISION

*General Rules*

The Board generally has jurisdiction to entertain proposed amendments to the pleadings upon conditions fair to both parties provided that the amendments relate to matters that are otherwise within the scope of the appeal and do not assert new claims. *Lockheed Martin Aircraft Center*, ASBCA No. 55164, 07-1 BCA ¶ 33,472 at 165,933-34; *Environmental Chemical Corp.*, ASBCA No. 58871, 15-1 BCA ¶ 36,110 at 176,288-90; *GSC Construction, Inc.*, ASBCA No. 59046, 15-1 BCA ¶ 35,882 at 175,429. It is well established that claims cannot properly be asserted for the first time in pleadings on appeal to the Board. *E.g., Consolidated Defense Corp.*, ASBCA No. 52315, 03-1 BCA ¶ 32,099 at 158,668-69; *Unconventional Concepts, Inc.*, ASBCA No. 56065 *et al.,* 10-1

8

BCA ¶ 34,340 at 169,591 (government claim for failing to perform prescribed work under one CLIN did not encompass government claim for double billing under other CLINs which were the subject of a proposed amendment); *Lasmer Industries, Inc.*, ASBCA Nos. 56946, 56966, 11-1 BCA ¶ 34,671 at 170,800-01 (referred to hereinafter as *Lasmer II*) (Board denied the contractor's request to amend its complaint after the government had granted all the relief requested, because the proposed amendment set forth new claims for different types of relief involving different operative facts in addition to the alleged impossibility of the specifications submitted to the CO.).

Although these appeals involve government claims, the complaints were filed by appellant. Because the contractor is the party required to appeal both its own and government claims, contractors generally file the initial pleading (complaint) even where the subject matter of the appeal involves a government claim absent grant of a motion requesting that the first pleading be filed by the government party. *E.g., Kellogg Brown & Root Services, Inc.*, ASBCA No. 59557, 15-1 BCA ¶ 35,865 at 175,346; *see* ASBCA Rule 6; *see generally* 29 NASH & CIBINIC REPORT ¶ 51.

In the case of government claims, the CO decision generally defines not only the scope of that claim but circumscribes the parameters of the appeal as well. The CO decision is commonly referred to as a "linchpin" of the CDA disputes process and establishes the "outer limits" of both the government claim and CO decision asserting that claim. Neither the contractor nor the GTA can expand those limits. *Honeywell, Inc.*, ASBCA No. 47103, 95-2 BCA ¶ 27,835 at 138,792 (CO decision asserting government claim and addressing CAS 413 segment closing and associated pension cost issues for only one segment did not support jurisdiction over pension cost issues related to the closing of other segments not addressed in the CO decision; however, appellant could present evidence of inconsistent application and interpretation of relevant CAS provisions as a defense to the government claim).

A primary purpose of the CDA with respect to government claims is to clearly delineate the government's position as well as to resolve disputes informally at the CO level. *E.g., Applied Companies v. United States*, 144 F.3d 1470, 1478 (Fed. Cir. 1998). FAR 33.211(a)(4)(iii) and (iv) requires the CO decision to identify areas of factual agreement and disagreement and the supporting rationale for the decision. There must be express mention of the specific factual issues in dispute and rationale for the CO's decision. Implicit inclusion of other possible disputes is generally not enough to serve as a basis for jurisdiction. In *Motorola, Inc.*, ASBCA No. 46785, 95-2 BCA ¶ 27,645 at 137,807, the CO decision was limited to the issue of inclusion of facilities capital in computing appellant's G&A rate. Accordingly, the fact that the CO's demand for repayment in an amount that implicitly considered other G&A issues did not expand the Board's jurisdiction to resolve other disputes involving them. Similarly, in *International Telephone & Telegraph Corp./Electro-Optical Products Division*, ASBCA No. 27802, 83-2 BCA ¶ 16,773 at 83,389-90 (cited in *Motorola*), the Board declined jurisdiction over a government claim for an additional CAS 401

violation not mentioned in the CO decision asserting a defective pricing claim even though the alleged CAS 401 violation was mentioned in an underlying DCAA audit report which the Board deemed a "second-tier documentary reference." With respect to the debt determination and demand for payment included in the CO decisions, we also note that FAR part 32.603(b)(1) and (2) state that "[t]he amount of the indebtedness determined by the [CO] shall be an amount that (1) [i]s based on the merits of the case; and (2) [i]s consistent with the contract terms."

In analyzing whether a new claim has been presented, the Board will examine, *inter alia,* changes in the evidentiary predicate supporting the claim. Where the Board is required to review only "the same or related evidence" it will generally find that only one claim exists. *Placeway Constr. Corp. v. United States,* 920 F.2d 903, 907 (Fed. Cir. 1990).

Although increases or reductions in the amount claimed on appeal do not generally deprive the Board of jurisdiction, quantum revisions must relate to the "same operative facts." *Todd Pacific Shipyards Corp.,* ASBCA No. 55126, 06-2 BCA ¶ 33,421 at 165,687; *Environmental Chemical,* 15-1 BCA ¶ 36,110 at 176,289-90 (permitting amendment of complaint to include *Eichleay* damages supplementing appellant's computation of delay claim quantum); *cf. Trepte Construction Co.,* ASBCA No. 38555, 90-1 BCA ¶ 22,595 at 113,385-86 (striking amendment to complaint asserting new constructive acceleration entitlement claim where appeal involved solely delay claim).

As the government contends, the Board's jurisdiction is *de novo* and the CO's findings are not subject to any presumption of correctness nor are they binding on appeal. *Wilner v. United States,* 24 F.3d 1397, 1401-03 (Fed. Cir. 1994) (en banc). However, the parties' burden of proving their cases *de novo* does not expand the scope of claims or authorize jurisdiction over government claims that have not first been asserted in a CO final decision. *Nova Group, Inc.,* ASBCA No. 55408, 10-2 BCA ¶ 34,533 at 170,330-31 (jurisdiction required CO decision seeking recoupment); *Lockheed Martin Services, Inc.,* ASBCA No. 58028, 13 BCA ¶ 35,244 at 173,025 (contractor's price redetermination claim sought the difference between the amount determined and paid by the CO pursuant to a contract modification ($1,459,537) and the "not-to-exceed" amount ($2,600,000) of the modification; CO final decision simply denied the claim for the difference; on appeal, the government claimed that the contractor was not entitled to a license fee amount of $779,089 included in the amount paid pursuant to the modification but not mentioned in the CO decision; Board determined that the request for payment of the license fee constituted a new government claim that it lacked jurisdiction to consider).

10

*The Proposed Amendments Represent New Government Claims*

We apply the above principles to the facts of these appeals and conclude that the proposed amendments based on the proration methodology constitute new claims that we lack jurisdiction to address.

We consider that the proposed amendments would alter the "essential nature" and fundamental basis of the claim asserted in the final decisions. *See Shams Engineering and Contracting Co. and Ramli Co.*, ASBCA Nos. 50618, 50619, 98-2 BCA ¶ 30,019 at 148,524-25. The GTA position is premised on a new and fundamentally different interpretation of the executive compensation limitations than underlay the CO decisions and assessments. The government claims set forth in the CO's decisions merely alleged that the amount paid exceeded a compensation ceiling computed in accordance with a methodology that neither party disputed. Both the DCAA auditor and the CO implicitly considered and rejected the interpretation now espoused by MAR and the GTA. The CO considered the costs to be unallowable because they exceeded the compensation ceiling mutually agreed to by the parties.

As appealed, there was no need to present or evaluate evidence regarding the proper methodology for computing the cap. The latter evidence encompasses a new contract interpretation issue which in turn could necessitate examination into legislative and regulatory history supporting each of the parties' positions. The proper interpretation to be accorded the relevant executive compensation provisions is now vigorously disputed by the parties on appeal. Consideration of the expanded evidentiary predicate to resolve the claims as revised and computed by the GTA would fundamentally change the scope and character of this appeal and greatly increase the monetary stakes. *Cf. Grumman Aerospace Corp.*, ASBCA No. 46834, 48006, 97-2 BCA ¶ 29,180 at 145,114-15 (denying contractor motion to amend complaint where the proposed new entitlement theory for recovery of additional equipment costs "replaced one set of facts with a completely different set of operative facts" altering the "nature and magnitude" of the factual predicate for recovery). In essence, the ostensible[2] difference between the parties on appeal involved an arithmetic issue. Appellant contended that the amounts properly added together were under the cap while the CO's calculations indicated the compensation claimed exceeded the cap.[3]

---

[2] The difference between the parties' calculations may have been attributable to a more substantive issue regarding includable elements of executive compensation, but neither party identified the source of the difference apparently due to its small amount and appellant's ultimate concession and payment utilizing the CO's calculations.

[3] We emphasize that the government is seeking amendment of its answer in the face of appellant's opposition. *See Int'l Telephone & Telegraph*, 83-2 BCA ¶ 16,773 at 83,390. The parties recognize that if the amendment is not permitted

A simple arithmetic problem would be transformed by the proposed amendments into a full-scale controversy challenging the correctness of the parties' prior conduct and practice in computing the cap. In essence, the amendment would convert material factual areas of agreement and methodology in the Unallowability and Penalty decision into areas of disagreement. Moreover, AV alleges that the methodology used by the CO to compute the ceiling has been used consistently by the parties in prior years. Thus, the evidentiary predicate would be further expanded to include proof of the alleged standard practice in prior FYs and the legal issues expanded to include consideration of rules and considerations related to the prior conduct of the parties.

The government cites only one precedent involving a government claim in support of its position, *EJB Facilities Services*, ASBCA No. 58314, 13 BCA ¶ 35,425 at 173,779. *EJB* concerned a claim by the Navy for fire damages for negligence resulting from the one-time event. Although the CO's final decision stated "[t]he Government's claim asserts EJB owes the Government $3,109,861.57" and alluded to the Navy's $11.26 million estimation of costs to repair and provision of emergency power previously sent to the contractor, the CO considered that EJB's liability was limited to $500,000 based on his reading of the contract's General Property and Insurance clauses. On appeal, the Navy's answer sought damages of $12 million. EJB, *inter alia,* moved to dismiss the alleged $12 million "counterclaim" contending that it represented a new government claim. The Board denied the motion emphasizing that the difference between the Navy's answer and the final decision related solely to the measure of damages relating "to the same fire on the same date in the same location." *Id.* at 173,781. There are several material distinctions between *EJB* and the instant appeals. Among other things, the "operative facts" necessary to establish the contractor's negligence and government entitlement to any damages remained unchanged by the Navy's answer. In contrast, the GTA's new claims in the instant appeals would expand the scope of the appeals to include new *entitlement* facts related to the parties' course of conduct and revised computation methodology. In addition, the CO decision in *EJB* placed the contractor fully on notice of the various damages calculations, issues and methodologies by their express mention in the final decision. In essence, the proposed revisions in *EJB* were quantum revisions and adjustments that allegedly flowed from the contractor's negligence. They had no impact on proving the "operative facts" essential to establishing government entitlement or EJB's liability for fire damages. In these appeals, the steps or elements required to establish government *entitlement* and the propriety of the disallowance and penalty would fundamentally change. We also note that the $12 million the Navy sought in *EJB* for damages was also set forth in the *initial* government pleading. Here, the revised methodology and recomputation of the disallowance was first resurrected

_____

because it would result in assertion of a new claim, the new claim would apparently be time-barred as to FY 06.

by the GTA years after it was rejected by the auditor and never mentioned in either the CO final decision or audit report.

The fact that both the CO decision and proposed amendment involve executive pay compensation issues is not conclusive. There could be numerous bases for disagreement regarding the determination of whether the executive compensation in dispute exceeded the statutory ceiling. The facts and rationale relied on by the CO represent one of them. But the possibility that other disputes may exist between the parties regarding executive compensation does not expand the scope of our jurisdiction to consider what the CO elected not to address, much less government positions that the CO elected implicitly to reject. Although the CO had the option of setting forth the GTA's alternative methodology in her final decision she opted not to do so.

It also bears mention that, whereas the CO decision was based on a mutually-agreed methodology for computing the compensation cap, the GTA proposes a different methodology that materially changes quantum, as well as the essential nature and operative facts forming the factual predicate of the original claims. *Cf. Environmental Chemical*, 15-1 BCA 36,110 (quantum amendment permitted but not new entitlement claim). There are wide disparities in the amounts sought in both the Unallowability and Penalty decisions and the amounts set forth in the amendments proposed by the GTA in the related appeals. The monetary relief sought by the GTA increases substantially that originally claimed, and greatly escalates the stakes involved in the litigation. As emphasized above, the GTA's methodology is based on a new method of determining the cap and is not a factor or element that is either subsumed within or inherent in the CO's decisions. In *Southwest Marine, Inc.*, ASBCA No. 54550, 08-1 BCA ¶ 33,786, the Board concluded that the Navy's inclusion of an amount of $212,860 seeking recoupment of allegedly overpaid interest included in a unilateral modification increasing the incentive contract's ceiling price constituted a new government claim. Specifically, the Board granted a motion to strike the interest component of the government's claim because it required proof of different operative facts where the interest element included in the modification was subsumed within the overall settlement and thereby "lost its character" as a discrete element of the increased amount of the modification; the CO decision asserting the government claim did not question the validity of the modification or amounts included therein; and, the government's proposed recoupment constituted an "additional element of quantum to account for the interest that depends upon reopening [the modification]." *Id.* at 167,220; *see also Lockheed Martin Aircraft Center*, 07-1 BCA ¶ 33,472

We also note that all of the pertinent facts relating to the GTA's proposed amendment were readily available at the time of issuance of the final decisions. They were not adjustments in quantum amounts that reasonably can be said to be based on or developed in the final evidentiary record or in the normal course of litigating the claim. *E.g., K-Con Bldg. Sys., Inc.*, 778 F.3d 1000, 1006 (Fed. Cir. 2015); *see also Tecom, Inc. v. United States*, 732 F.2d 935 (Fed. Cir. 1984); *Ball Aerospace & Technologies Corp.*, ASBCA No. 57558, 11-2 BCA ¶ 34,804 at 171,273. The differences here do not pertain

13

to additional explanatory details of the theory upon which the CO's decision was based or quantum refinements based on that theory. Nor do they pertain to complementary, alternative theories that are consistent with the basic thrust, approach and methodology of the CO's decision. Instead, the GTA's position flatly rejects the CO's theory and methodology because the GTA considers the CO (apparently as well as the cognizant DCAA auditor) to have arrived at her decision "in error." If the CO agrees with the GTA, the ordinary government recourse is to withdraw the erroneous claims and demands and issue a new decision. The CO decision while on appeal is not binding on either party and may be superseded by another CO decision during the pendency of the appeal. *The Ryan Company, Inc.,* ASBCA No. 53230, 02-1 BCA ¶ 31,842 at 157,338. Nevertheless, it is the CO that must issue the decision. Where the government claim is, *inter alia,* materially "in error" or no longer viable, the proper course of action is to withdraw the decision and/or issue a superseding CO decision. The CO's unequivocal, good faith rescission or withdrawal of the final decision asserting a government claim generally leaves no claim before the Board and no relief to be granted and therefore the Board generally does not retain jurisdiction over the appeal. *KAMP Systems Inc.,* ASBCA No. 54253, 09-2 BCA ¶ 34,196 at 168,995; *Wimberly, Allison, Tong & Goo, Inc.,* ASBCA No. 56432, 09-2 BCA ¶ 34,301 at 169,436-37, *aff'd on recon.,* 10-1 BCA ¶ 34,365; *cf. KBJ Architects, Inc.,* ASBCA No. 56434, 09-2 BCA ¶ 34,298 at 169,421 (NAFI claim, CO rescinded decision asserting government claim "as it was issued prematurely and incorrectly").[4]

Additional reasons justify a conclusion that the GTA's proposed revision of the amount of *expressly* unallowable costs and associated penalty constitute a new claim that we are not empowered to address in the Penalty appeal (ASBCA No. 58598). Prior to imposing a penalty, FAR 42.709 requires a multi-step process and evaluation not only in assessing the "express" unallowability of the costs in dispute and computing the amount of any penalty. It also mandates the exercise of the CO's independent discretion in determining whether any penalty should be waived. The GTA's analysis, in particular, circumvents the requirement that the CO should consider, in her discretion, whether the penalty should be waived when one or more of the factors justifying waiver are present. In this regard, the fact that the CO determined that waiver was not justified prior to issuance of her original decision, does not dictate that the same conclusion necessarily would be warranted on facts forming the basis of the GTA's proposed revision of the penalty claim. The proposed amendments substitute the GTA's judgment regarding the waiver of penalties that are the province of the CO

---

[4] However, the CO generally cannot divest the Board of jurisdiction over a contractor claim by subsequently withdrawing the final decision over appellant's objection where the general subject matter of the claim remains clearly in dispute. *Holmes & Narver, Inc.,* ASBCA No. 51430, 99-1 BCA ¶ 30,131 at 149,055 (essential dispute regarding on-going rental costs over a number of years remained unresolved).

to make. The CO, not the GTA, is charged with complying with the requisite FAR procedures preceding issuance of the penalty demand and claim.

Government attorneys and auditors are advisors to the CO. They may present their informed guidance in their areas of specialization for the CO's consideration in reaching business decisions generally and more specifically asserting claims on behalf of the government. However, the CO must exercise her "independent discretion" in doing so. *Prism Construction Co.*, ASBCA No. 44682 *et al.*, 97-1 BCA ¶ 28,909 at 144,124. Here the CO exercised her independent judgment and asserted the claims in a manner that was consistent with conclusions in the audit report but now contrary to the opinions of the GTA. Similarly prior to issuing the demand for payment contained in the CO decisions, FAR 32.603(b)(i) and (ii) requires the CO to base the demand on her assessment of the merits of the case and the proper interpretation of contract terms. The GTA's proposed amendments effectively would reverse the CO's exercise of her judgment and independent discretion. *Cf. RGI, Inc.*, ASBCA No. 38722, 92-2 BCA ¶ 24,839 at 123,932 (in the context of a contractor claim, the Board emphasized a "critical test" in resolving whether a new claim has been first raised on appeal is whether the CDA disputes process is "undermined" by "circumventing the statutory role of the CO to...pass judgment").

*Dismissal with Prejudice of Moot Appeals*

In the case of contractor claims, "[w]here an appeal has been rendered moot by the [CO] granting all of the relief requested in the claim on appeal, the Board should dismiss it with prejudice since there is no longer a dispute between the parties on the appealed claim." *Lasmer II*, 11-1 BCA ¶ 34,671 at 170,801; *Chapman Law Firm Co. v. Greenleaf Construction Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007) ("[w]hen, during the course of litigation, it develops that...questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed"). In *Lasmer II*, appellant sought a "no-cost" termination "because of the impossible specification and the updating of government records "to reflect the satisfactory completion of the contract." Previously in *Lasmer Industries. Inc.*, ASBCA Nos. 56946, 56966, 10-1 BCA ¶ 34,433, the government moved to dismiss after the CO offered appellant a no cost termination but declined to base the offer on the "impossible specification." Since the full relief requested was not granted, the Board declined to dismiss the appeals because the issue of the impossibility of the specification was not moot. In *Lasmer II*, the CO terminated the contract at no cost "because of the impossible specification" and updated the government's past performance records. The Board dismissed the appeal with prejudice, noting that there was no longer any dispute as to the allegations underlying the claim as submitted to the CO who granted all relief requested. The Board also denied appellant's motion to amend its complaint "to escape dismissal" with six new claims for monetary damages for breach of contract and reformation. We consider that the same principles and objectives should be applied in the case of government claims. Here AV has fully satisfied all government demands set forth in

15

the CO's final decisions either via settlement in the First or Second PSA or through payment of the full penalty claimed by the CO. Absent the GTA's proposed amendment of the pleadings, no issues remain for the Board to resolve and no further effectual relief is available. The motion to amend here was made after the settlement of all other cost issues, including the tax penalty matter resolved pursuant to ADR, and following appellant's agreement to pay in full the penalty associated with the above-ceiling executive compensation sought by the CO in her decision. The belated assertion of the new claims raised in the proposed amendment approximately nine years following AV's disputed indirect cost submission and almost 2½ years following issuance of the CO decisions is jurisdictionally fatal.[5]

## CONCLUSION

We conclude that the GTA's proposed amendments to the government's answers represent new claims which we lack jurisdiction to decide. Accordingly, the government's motion to amend is denied. We further conclude that, inasmuch as the government claims in these appeals have either been settled or paid in full, there are no remaining justiciable issues in dispute for resolution. Therefore, we grant appellant's motion to dismiss these appeals as moot.

Dated: 30 March 2016

ROBERT T. PEACOCK
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[5] The government's contention that the language inserted in the First PSA in August 2014 should have placed appellant on notice of a revised government computation methodology is not only jurisdictionally irrelevant but specious. No reasonable interpretation of that language alone would have alerted appellant to the material deviation in the computation of the ceiling and associated claims proposed in the GTA's amendment. We have found no documentation that the appellant was apprised of the new claims prior to the eve of the mediation.

I concur                                              I concur


_(signature)_                                         _(signature)_

MARK N. STEMPLER                                      RICHARD SHACKLEFORD
Administrative Judge                                  Administrative Judge
Acting Chairman                                       Vice Chairman
Armed Services Board                                  Armed Services Board
of Contract Appeals                                   of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA Nos. 58598, 58599, Appeals of
AeroVironment, Inc., rendered in conformance with the Board's Charter.

Dated:


                                     JEFFREY D. GARDIN
                                     Recorder, Armed Services
                                     Board of Contract Appeals

17